## FLORENCE SCANNAL *vs.* CITY OF CAMBRIDGE.

Middlesex.　January 8, 1895. — February 27, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Defective Highway — Absence of Barrier — Law and Fact — Action.*

In an action against a city for personal injuries occasioned by an alleged defect in a highway, the question whether there is a dangerous place or object so near the line of travel that travellers will be likely to be injured by it unless a railing is provided for their protection, is ordinarily one of fact for the jury; but if, in the view of the evidence most favorable to the plaintiff, the risk of injury is so small that it would be unreasonable to require the city to provide the railing, the court will decide it as a question of law, and order a verdict for the defendant.

Earth was dug out of a street in a city in the construction of a sewer, and dumped upon an adjacent field, which was somewhat lower than the street, and the fence on the side was taken away for a little distance. There was a sidewalk of gravel over eight feet wide nearly on a level with the street, with little depth of gutter to separate it from the travelled part of the way. The earth so dumped in the field had settled so as to be about two inches lower than the sidewalk, and sloped but very little for a few feet, then sloped more decidedly until, at about seventeen feet from the line of the street, it fell off quite rapidly from the edge of the embankment about two and a half feet to the level of the field. This earth had been graded somewhat imperfectly, and it was not very rough. A person was driving along the way in the daytime, when his horse became frightened, wheeled suddenly to the right, went across the sidewalk into the field over the soft earth, and then swerved to the left, causing the right wheels of the wagon to be at a lower level than the left wheels, and descended the embankment, the driver being thrown out and injured. *Held*, in an action against the city for his injury, that there was no evidence which would warrant the jury in finding the way to be defective.

If a traveller on a highway in a city loses complete control of the horse which he is driving, and such loss of control is not momentary only, but is a permanent condition, and he is injured, he cannot maintain an action against the city for his injury, although the way is defective.

TORT, for personal injuries occasioned to the plaintiff by an alleged defect in a highway in the defendant city. Trial in the Superior Court, before *Mason*, C. J., who ruled that the action could not be maintained, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*J. J. Scott,* for the plaintiff.

*G. A. A. Pevey,* for the defendant.

KNOWLTON, J.   This case presents two questions : first, whether there was evidence which would warrant the jury in finding the highway defective for want of a railing; and, secondly, whether the accident happened by reason of the plaintiff's horse being beyond his control.

Portland Street, near the place of the accident, is fifty feet wide, and runs nearly north and south.   The adjacent land on each side is somewhat lower than the street, and the fence on the westerly side had been taken away for a little distance, and earth dug out in the construction of the metropolitan sewer had been carried into the field and dumped there.   There is a sidewalk of gravel eight feet and eight inches wide nearly on a level with the street, with little depth of gutter to separate it from the travelled part of the way.   The earth which had been dumped in the field started next the sidewalk, nearly at the level of the walk, although it had settled so as to be about two inches lower than the walk, and sloped but very little for a few feet, and then sloped more rapidly until, at about seventeen feet from the line of the street, it fell off quite rapidly from the edge of the embankment about two and one half feet to the level of the field.   The earth dumped there had been graded somewhat, but not perfectly, and it was not very rough.   The plaintiff, a pedler, was driving along in a southerly direction at about two o'clock in the afternoon, when his horse was frightened at seeing another horse in the field on the easterly side, at a point considerably below the level of the street, and wheeled suddenly to the right, went across the sidewalk into the field over the soft earth, and then swerved to the left, causing the right wheels of the wagon to be at a lower level than the left wheels, and as he descended the embankment the seat was thrown out and the plaintiff with it.   The plaintiff testified that " he had no more control of the horse than a baby would have ; that he tried to pull the horse in and to steer him out into the street again, but he could not do it."   The plaintiff also testified that from the edge of the highway to the place where he went over was from fifteen to seventeen feet.   The engineer — who made measurements and prepared a plan from information given by one Stetson, who

pointed out to him the place where the wagon went down the incline, and where it stopped, and where it crossed the sidewalk — gave the distance between the line of the street and the place of the accident as seventeen feet. The testimony of Stetson, who was the only witness on this point called by the plaintiff, was to about the same effect, although one or two of his answers might warrant a finding that the distance was not quite so great. The plaintiff contends that the open field with the earth dumped upon it, as described above, was so dangerous as to call for a railing to prevent persons driving on the street from being injured by driving over it.

It has often been held that a city or town is not bound to erect barriers to prevent travellers from straying from a highway, and thereby reaching a dangerous place at a considerable distance from it. In *Adams* v. *Natick*, 13 Allen, 429, 431, Mr. Justice Wells says: "Towns are not required to fence their roads with a view to prevent frightened animals from escaping out of the limits of the highway, even when the near location of a railroad may render such occurrences probable. Neither are they bound so to construct their roads that a horse, frightened by any cause, and rushing out of the track which is wrought for travel, will not expose himself nor the carriage and its occupants to injury from the embankments, gutters, or other obstructions upon the sides of the road, either within or without the limits of the highway. . . . They are bound to provide suitable railings against precipices, excavations, steep banks, deep water, etc., within or without the limits of the road, if they are so imminent to the line of public travel as to expose travellers to unusual hazard." The question in every such case is whether there is a dangerous place or object so near the line of travel that travellers will be likely to be injured by it unless a railing is provided for their protection. The risk of coming upon a dangerous object, and the degree of danger incurred if one does come upon it, are both involved in the question. It is ordinarily a question of fact for the jury ; but if, in the view of the evidence most favorable to the plaintiff, the risk is so small that it would be unreasonable to require the city or town to provide the railing, the court will decide it as a question of law, and order a verdict for the defendant. It has frequently been decided that a dangerous

place, to require a railing, must be of an unusual character, such as a bridge, declivity, excavation, or steep bank. It is difficult to lay down any general rule applicable to these cases, but in the present case it seems that the risk of an accident such as happened was very small. It would seem very improbable that one driving with ordinary care along the street would go over the sidewalk into the field, and go on over the soft earth a distance of seventeen feet to a steep declivity. If unwittingly he should find himself driving on the earth which had been dumped there, there would be little probability of any serious accident. We are of opinion that there was no evidence which would warrant the jury in finding the way to be defective. *Sparhawk* v. *Salem*, 1 Allen, 30. *Murphy* v. *Gloucester*, 105 Mass. 470. *Marshall* v. *Ipswich*, 110 Mass. 522, 526. *Puffer* v. *Orange*, 122 Mass. 389. *Barnes* v. *Chicopee*, 138 Mass. 67. *Damon* v. *Boston*, 149 Mass. 147, 151. *Hudson* v. *Marlborough*, 154 Mass. 218, 223. *Richardson* v. *Boston*, 156 Mass. 145. *Logan* v. *New Bedford*, 157 Mass. 534.

The bill of exceptions also states that the horse was beyond the control of the driver. It is difficult to discover any evidence on which the jury could find that this loss of control was only momentary. If it was something more than a momentary accidental loss of control, which ought not to be treated as an independent contributing cause of the injury, and was a permanent or long continuing condition, the plaintiff would be precluded from recovery, even if the way were defective. *Babson* v. *Rockport*, 101 Mass. 93. *Lyman* v. *Amherst*, 107 Mass. 339, 346. *Wright* v. *Templeton*, 132 Mass. 49, 51. *Higgins* v. *Boston*, 148 Mass. 484, 486. But this part of the case need not be further considered.

*Exceptions overruled.*