## DETERMINED BY THE

# SUPREME COURT OF APPEALS

### OF

# WEST VIRGINIA

## CHARLESTON.

WHITTINGTON, ADMR. v. COUNTY COURT OF
JEFFERSON COUNTY.

Submitted October 10, 1916.    Decided October 17, 1916.

1. APPEAL AND ERROR—*Parties—Death of Party.*

Under the practice in this state, where a judgment creditor has died before a writ of error is taken, the debtor may nevertheless prosecute his writ of error without a revival of the judgment, and the writ may be served upon the personal representative, if he is named in the petition.    (p. 2).

2. HIGHWAYS—*Maintenance—Repair—"Out of Repair."*

To be out of repair, within the meaning of Sec. 56a (49), Ch. 43, Barnes' Code, a county road must be not in a reasonably safe condition for travel in the ordinary modes, by day or by night.    (p. 2).

3. SAME—*Use for Travel—Liabilities for Injuries.*

A pile of crushed stone, intended for use in making repairs upon a macadam road, when and where needed, deposited on the right of way so that the edge of the pile slopes to a line within a foot or two of the roadbed, which itself, at that place, is level, smooth and fifteen feet in width, does not cause the road to be out of repair, within the meaning of the statute; and the county court is not liable to a traveler who, even though without fault himself, is injured in the nighttime by his horse becoming frightened and suddenly shying onto the stone pile and overturning his vehicle.    (p. 2).

4. SAME—*Use for Travel—Actions for Injuries—Question of Law.*

Whether or not a county road is out of repair, depending not upon conflicting testimony, but upon clearly established or admitted facts, which are of such a character that reasonable minds should not differ concerning their effect, is a question of law for the court to decide.    (p. 2).

(MILLER, JUDGE, dissenting).

Error to Circuit Court, Jefferson County.

Action by William McSherry against the County Court of Jefferson County. After judgment for plaintiff he died, and the defendant prosecuted error against George B. Whittington, administrator of plaintiff .

*Reversed and rendered.*

*George D. Moore* and *James M. Mason, Jr.,* for plaintiff in error.

*Geo. M. Bellzhoover, Jr.,* for defendant in error.

WILLIAMS, PRESIDENT:

William McSherry was driving along the Smithfield and Shepherdstown Turnpike, one of the public macadam roads of Jefferson county, about ten o'clock at night, with his wife and cousin, in a one horse buggy, when his horse suddenly became frightened, from some unknown cause, and swerved onto a pile of crushed stone deposited by the roadside and overturned the buggy, throwing the three occupants out and injuring Mr. McSherry. He sued the county court of Jefferson county and recovered a judgment for $550.00 damages, and it brings the case here on writ of error.

A motion to dismiss the writ of error is made on the ground that, after judgment in the court below and before application was made for the writ of error, the plaintiff died, and there was no revival of the judgment. The practice both in Virginia and in this State has been to proceed with the case on writ of error or appeal, as the case may be, as if the judgment creditor were still in being, and to issue process against his personal representative, when he is designated in the petition, which was done in this case. *Phares, Ex'r.,* v. *Saunders,* 18 W. Va. 336; *Butcher* v. *Kunst,* 65 W. Va. 384; and *City of Charlottesville* v. *Stratton's Adm'r.,* 102 Va. 95. The motion to dismiss is therefore overruled.

It is proven that the horse was well broken to the buggy, was reasonably gentle; that plaintiff was exercising ordinary care in driving when the accident occurred; that the night was dark, but light enough to see the road just in front of the

horse; that the used portion of the highway, or roadbed, at the point of accident, was 15 feet wide and smooth; that the pile of crushed stone was 21 feet long, 10 feet wide and 2-½ feet high, and sloped near to the edge of the roadbed, some of the witnesses say within two or three feet of it, and the photographs introduced in evidence show a strip of ground between the pile of stone and the edge of the road, and some witnesses say a few stones had rolled into the road and had been ground up by the wheels of passing vehicles; that, the entire right of way is 44 feet wide, extends some distance on either side of the road, and that the surface of the ground is practically level near the stone pile; that the crushed stone was intended to be used in repairing the road when and where it might need it, and was deposited there a year or more before the accident, but whether by some county official or a third party is not material; that plaintiff lived in the neighborhood, passed the stone pile frequently and knew of its existence, in fact, that he had passed it on the same evening he was hurt and only a few hours before.

In view of the uncontradicted evidence clearly proving the size and shape of the pile of macadam, its location relative to the used portion of the highway, the general character of the ground and the width of the used portion of the highway at the place of accident, the question presented is one of law rather than fact. The statute, Sec. 56a (49), Ch. 43, Barnes' Code, makes a county court liable to anyone who sustains an injury in person or property "by reason of a public road * * * being out of repair." This statute has been held to impose an absolute liability, that is, a liability not necessarily depending on the negligence of a public official whose duty it is to keep the road in repair, but depending on the fact of its being out of repair. But the words, "out of repair," must be given a reasonable interpretation. They have been held to include obstructions in the road, failure to maintain guard rails along a walled approach to a bridge, as well as defects in the surface of the roadbed. Reasonably construed, they mean the same thing as, "not being in a reasonably safe condition for travel in the ordinary modes, by day or by night." The legislature is presumed to have had knowledge of the

generally existing condition of the highways throughout the various counties of the state, when it enacted the law, and evidently knew that no county in the state kept, or attempted to keep, the full width of the entire right of way free from obstructions and in a condition to be traveled over. It knew that roads of variable width were maintained over the highways and never intended to impose upon county courts the duty of maintaining the entire width of the right of way in a fit condition for travel. The same measure of liability that is applied to a city can not always be applied to a county court, for the reason that a city invites the public to use the whole width of its streets, by opening them to travel and undertaking to keep them in condition for use, from curb to curb. Hence, a stricter rule is applied in a case of injury resulting to a traveler from an obstruction on the street, than should be applied to a county court in a case of injury resulting from an object on a county road, but not in the used portion thereof. The universal custom of the county courts is, to keep, or at least, try to keep only such portion of the right of way in condition for travel as will sufficiently accommodate the public, and to keep such portion in good condition is all the law requires of them. Hence this case is not governed by *Rucker* v. *City of Huntington,* 66 W. Va. 104, and similar cases allowing recoveries against cities and towns. Neither is it controlled by the decision in *Rohrbough* v. *Barbour County Court,* 39 W. Va. 472, on which plaintiff's counsel mainly relies. There, plaintiff was injured on a dark night, by his horse suddenly taking fright and backing the vehicle over the wall of an approach to a bridge. No guard rails were used, and because of the high wall and narrowness of the road over the approach, the court evidently concluded the road was dangerous, and therefore held that guard rails were necessary. The court's decision was necessarily based on such holding in that case, i. e., that the used roadway itself was not in a reasonably safe condition for travel, for the reason that there were no guard rails along the walls of the approach.

In the present case the traveled roadway was fifteen feet wide and the surface smooth, and the ground on either side

of the place where the injury occurred was almost level. There was, therefore, nothing to suggest any danger at that point; and, if plaintiff's horse had not become frightened and ran upon the rock pile, no injury would have resulted; a tree, a stump or a natural rock projecting above the surface, instead of the rock pile, could have produced the same result, or even a more serious injury, and the law certainly would not, in such case, hold the county court liable. If it did, then the way of the county courts would be hard indeed, for there are no county highways within the limits of the state that would measure up to such a test. Every case of this kind must be determined by its own peculiar facts. Our conclusion is that the uncontradicted facts in this case clearly show that the road, where the accident occurred, was not out of repair, but was, in the meaning of those words, in a reasonably safe condition for travel in the ordinary modes, both by day and by night, and that plaintiff's injury was the result of an accident, for which the county court is not liable.

There being no evidence to support the verdict, the court should have sustained defendant's demurrer to the evidence and entered judgment for it, and such will be the order of this court.

MASON, JUDGE, *(concurring)*:

The opinion concurred in by the majority of the court in this case does not affect in any manner the oft repeated decisions of this court that section 59a, chapter 43 of the Code, imposes an absolute liability on counties and cities and towns for injuries sustained on account of their roads, streets and sidewalks being "out of repair", and that the words "out of repair" includes obstructions to the highway as well as defects therein.

I am not willing to say that a public road is necessarily "out of repair" because every part of the "right of way" is not in condition to be used by travelers, when enough of the right of way is in reasonably good condition, affording the traveler a convenient and safe way. It is the duty of the authorities having control of public roads, streets and sidewalks, to provide for public use, highways reasonably safe, not

absolutely safe; nor does it follow that because a county or city owns a "right of way" which is wider than is necessary to have prepared and improved for use at the time, that it is negligence not to do so. The authorities will have performed their duties when they shall have provided reasonably for the public necessities. Why should the public demand more than they need? The portions of the public roads and streets which are to be kept in such repair are the parts of them used by persons traveling in the usual modes by day and night, and not the parts of them not so used and not prepared or intended for use. True, the traveled part of a road or street may be made dangerous by marginal obstructions, either by way of pitfalls or elevations, but such defects do not make the municipal authorities liable, unless they so affect the road as to make the traveled portion unsafe. We may imagine many marginal obstructions which it would be the duty of the officials to have removed; such as carcasses of dead animals, branches of trees overhanging the road so as to interfere with travel; landslides, or indeed anything which would prevent the easy, safe and convenient use of the public road for travel. A road built, as very many of the roads of our state are built, along hill sides, constructed by side cuts, on the upper side of the road an embankment and on the lower side a declivity, where enough of the right of way is opened and properly constructed to accommodate travelers, the embankment on the one side and the declivity on the other would not make the road "out of repair" within the meaning of this statute. If this were the law, then no doubt three-fourths of the roads of this state are "out of repair".

Then, if it is not the duty of counties in constructing roads, to free the margins of all embankments, rocks, stumps, and ravines, to protect the county from liability for injuries caused by such obstructions, can it be said that because such or like obstructions were permitted on the roadside at points where they did not exist when the road was constructed, create a liability? What difference to the traveler does it make whether the stone on the margin of the road which injures him, was left there when the road was constructed or placed

there afterwards? The test of the county's liability would be the same in both cases.

<em>Reversed and rendered.</em>

MILLER, JUDGE, *(dissenting)*:

I cannot concur. In the first place, the evidence is conflicting as to the height of the stone pile, and as to its exact location with reference to the traveled part of the road. All of the plaintiff's witnesses place its height, prior to the accident, at from three to four feet at the highest point. The height, two and one half feet, mentioned in the opinion, is the measurement given by the road surveyor, a witness for the defendant, made after the accident. The witnesses for the plaintiff say that the stone pile was pulled down by the lumbering of the horse over it and dragging it down with the buggy, which would be the natural result, and several of the witnesses for the plaintiff say that, as the lower court found, at least the edge of the stone pile so infringed upon the beaten road way that wheels of vehicles on the side next to it ran over the rock and ground them down to some extent, and the road surveyor, a witness for the defendant, says, referring to a time before the accident, that four or five times he told Elliott, the man who owned the rock pile, to get it out of the road. The evidence shows that the rocks did not belong to the county, but to Elliott, who had placed them there with the view of selling them to the county for improving the road; and the evidence shows that there was ample space to have deposited this stone away from the traveled way, so as to have been less dangerous to the traveling public; also that this rock pile had been maintained in this position at the time of the accident for about two years, notwithstanding the frequent warnings of the road surveyor to the owner to remove it, and I think it was a question for the jury, and not one of law for the court, whether the county was negligent with respect to maintaining this rock pile for so long a time as to be a menace to the public, and which resulted so seriously to the plaintiff in this case.

I think we are committed by a long line of decisions construing our statute to the comprehensive proposition that counties and municipalities are liable to persons injured there-

by for suffering or maintaining pitfalls, obstructions, or dangerous embankments upon or so near to a public road or street, as to endanger the lives and property of persons traveling, with ordinary care, in the usual course, upon foot, on horseback, or in vehicles, and that this liability is absolute when considered in connection with the character of the road, the country traversed by it, and all the surrounding facts and circumstances, and that generally the question whether defendant is guilty of negligence is one of fact or mixed law and fact for jury determination.

This law was applied in *Biggs* v. *Huntington,* 32 W. Va. 55, where a well hole had been allowed to exist, not in the traveled part of the unpaved road or street, nor on the sidewalk, but between the two, but in such proximity thereto as to make it dangerous to persons using the street or walk. In that case Judge GREEN, combating a contrary view expressed in some decisions cited, says: ''There are, however, numerous cases where a traveler, though he meets with an accident off from the public streets, has nevertheless recovered of the town the damages he has sustained, when sustained very close to the edge of the public highway.'' He cites cases frequently cited and approved by this court, namely, *Niblett* v. *Nashville,* 12 Heisk. 684; *Turnpike Co.* v. *Crockett,* 2 Sneed 271; *Memphis* v. *Lasser,* 9 Humph. 757; *Burnham* v. *Boston,* 10 Allen 290; *Hill* v. *Boston,* 122 Mass. 349. The proposition I am contending for is also affirmed in *Rohrbough* v. *County Court,* 39 W. Va. 472, where the injuries complained of resulted from a horse becoming suddenly frightened, as in this case, and shying away from a pile of rock in the roadway, not as in this case frightened by some other object and lumbering upon the stone pile, but instantly backing over an embankment forming an approach to a bridge unguarded by railing. The court in that case, differentiating it from *Smith* v. *County Court,* 33 W. Va. 713, where the result of the accident was said to be due proximately to the vicious character of the horse, rather than to the obstruction in the road, quotes approvingly the doctrine of Vermont and Massachusetts cases, that where the injury is the combined result of the accident and a defect in the highway, and it could not have happened but for the de-

fect, the town is liable. The law I contend for was also recognized in *Hungerman* v. *City of Wheeling*, 46 W. Va. 761, but not applied because the viciousness of the horse and not the defect, the want of a barrier along the roadside, was the proximate cause of the injury. And again in *Townley* v. *City of Huntington*, 68 W. Va. 574, where the want of repair in a public street consisted of a hole in the grass plot or parking, and not in the paved street or paved sidewalk. And in *Rucker* v. *City of Huntington*, 66 W. Va. 104, the defendant was held liable where the horse suddenly shied at a street car, and ran the vehicle to which he was hitched over a rock on the road. I do not think this case can be distinguished in principle from the Rohrbough case, cited in support of it. Other of our decisions might be cited I think which affirm the principle of the other cases.

The learned judge of the trial court, relying upon the decisions of this court, and I think properly interpreting them, overruled defendant's demurrer to the evidence, and entered judgment on the verdict for the plaintiff.

For the proposition, that a county must not allow obstructions to exist in the traveled parts of a road, or so near thereto as to make the traveled part thereof unsafe, considering the character of the road, the country traversed, and the weather conditions, the following authorities are cited: 15 Am. & Eng. Ency. Law, (2nd ed.) 452 and 453; Town of *Fowler* v. *Linguist*, 138 Ind. 566, 37 N. E. 133; *Moran* v. *Inhabitants of Palmer*, 162 Mass. 196, 38 N. E. 442; *Tilton* v. *Wenham*, 172 Mass. 407, 52 N. E. 514; *Morse* v. *Town of Richmond*, 41 Vt. 435, 98 Am. Dec. 600; *Drew* v. *Town of Sutton*, 55 Vt. 586, 45 Am. Rep. 644; *Houfe* v. *Town of Fulton*, 29 Wis. 296, 9 Am. Rep. 568; *Slivitski* v. *Town of Wien*, 93 Wis. 460, 67 N. W. 730; *Boltz* v. *Town of Sullivan*, 101 Wis. 608, 77 N. W. 870; *Wakeham* v. *Township of St. Clair*, 91 Mich. 15; *Davis* v. *Inhabitants of Charlton*, 140 Mass. 422, 5 N. E. 473; *Harris* v. *Inhabitants of Great Barrington*, 169 Mass. 271, 47 N. E. 881; *Scannal* v. *City of Cambridge*, 163 Mass. 91, 39 N. E. 790; *Tisdale* v. *Inhabitants of Bridgewater*, 167 Mass. 248, 45 N. E. 730.

The plaintiff is shown to have sustained serious, painful,

and permanent injuries, as the result of the stone pile in the road. The opinion concedes he was not negligent, that his horse was gentle, and that the shying and resultant injury were almost concurrent. I think these facts with the other facts recited call for an affirmance of the judgment.