STATE *ex rel.* ROY H. ADKINS, *Admr., etc. v.* EDGAR B. SIMS, *Auditor, etc.*

(No. 9725)

Submitted May 1, 1945. Decided June 26, 1945.

*Hillis Townsend, Joseph Thomas, M. E. Boiarsky* and *T. C. Townsend,* for petitioner.

*Ira J. Partlow,* Attorney General, *Kenneth E. Hines* and *W. Bryan Spillers,* Assistant Attorneys General, for respondent.

KENNA, JUDGE:

This mandamus proceeding was instituted by the State at the relation of Roy H. Adkins, Administrator of the Estate of Roy Herbert Adkins, deceased, for the purpose of having the Auditor required to approve a requisition addressed to him by the State Road Commissioner and based upon a general appropriation in the amount of $3500.00 in favor of the relator embraced within the 1945 Act of the Legislature known as "The Budget Bill". It is the relator's position that the appropriation was made to discharge a finding of the Court of Claims upon a claim filed by the relator in order to recover damages for the death of his decedent allegedly caused by the nonfeasance of the State Road Department. The reason for the Auditor's refusing to issue his warrant in compliance with the requisition and five similar requisitions is stated by him in a letter to the State Road Commissioner as follows: "I must respectfully decline to pay these claims for the reason that there is no law defining negligence alleged in these cases as actionable negligence. In the absence of a general statute permitting such action there is no basis for recovery. * * *". In declining to honor the requisition the Auditor was exercising the power conferred upon him by Code, 12-3-1.

The relator's decedent was killed on the night of January 26, 1941, when the automobile in which he was rid-

ing with five others went over a precipitous bank near the hard surface of State Route 61 above the town of Deepwater in Fayette County. The relator contended before the Court of Claims that the death of his decedent, and that of the five others in the car with him, was the proximate effect of the failure of the State Road Commissioner to install and maintain guard rails, road markers and a center line in order to render the road reasonably safe for the traveling public. Personal representatives of all who lost their lives in the accident filed claims for a total of $60,000 and the Court of Claims approved recoveries in each case, heard together, by a divided Court in a total of $21,000, or $3500.00 each. This finding was followed by the appropriation and requisition developing the controversy now before us. This proceeding therefore presents the question of what effect is to be given to a monied finding of the Court of Claims followed by an appropriation of the same amount to the petitioner and a requisition upon the Auditor in that amount drawn by the department against which the claim was filed.

In order to establish his claim as one within the jurisdiction of the Court of Claims under Code, 14-2-13, as a claim *ex delicto* upon which a recovery at law would be allowed but for the constitutional inhibition against suing the State, the relator relies upon the case of *Wells* v. *County Court,* 85 W. Va. 663, 102 S. E. 472, and cases therein cited, as holding that a public body charged with the duty of constructing and maintaining highways is liable for the consequence of the negligence of its officers and agents in the performance of that duty. Although the point is not clearly stated in the opinion in question, it is true that the discussions of this Court holding the public agency liable in the cases referred to are all based upon statutory provisions not found in this case. For a discussion of the area embraced within that duty and the question of whether it extends beyond the paved or traveled portions of the road, see the majority opinion and dissent in *Whittington, Admr.,* v. *County Court,* 79 W. Va. 1, 90 S. E. 821.

The testimony taken before the Court of Claims, as disclosed by its two opinions made part of this record by stipulation, established the fact that there were no road signs, center lines or guard rails at the turn of the road where the car in which relator's decedent was a passenger went over the embankment. No living person saw the accident so that it is not shown by direct proof, as appears from the opinions of the Court of Claims, that a guard rail, if there, would have prevented the automobile from wrecking or that road signs or center lines would have been heeded as warning. However, assuming that a guard rail would have prevented the car from going over the cliff, is it either practicable or reasonable to place the duty upon the State of going beyond maintaining the roadbed in reasonably safe condition and to guard against dangers that arise outside the traveled way and due to conditions not encountered by persons who stay on the road? In many instances the State has done just that, but not in the discharge of a fixed duty. Whether to provide a safeguard for the unwary and those who may be forced from the traveled way by the carelessness of others, whatever may have been done in that respect was done in the exercise of a discretionary power, and not as a required performance on the part of the State.

However, the question raised by the Auditor's letter does not control in this matter. In our judgment this case is to be decided as resting upon a legal principle far more basic, which we believe may be stated plainly.

Did the Legislature, by including the amount of relator's claim in the "Budget Bill", determine that it, supported by a finding of the Court of Claims, is a moral obligation resting upon the State so as to avoid the principle invalidating appropriations of public moneys for private use otherwise? *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914B 1278; 26 Am. Jur. ("Public Funds") 756.

As expressly provided in the Act of its creation, the Court of Claims is not a judicial body, but its function is entirely legislative and recommendatory. Code, 14-2-4.

It, alone, does not determine whether a moral obligation rests upon the State of West Virginia. No review lies to its findings except to the extent that the Legislature may adopt or reject. The Courts consider them only to the extent that they may become a part of the legislative procedure in the particular matters under consideration. Their findings determine no legal nor moral right that would overcome legislative decision to disregard them. Therefore, the questions involving the jurisdiction of the Court of Claims are not problems for judicial determination, but are matters that the approval or disapproval of the Legislature must decide in each case reported to it by that Court. If that Court determines a matter plainly not within its powers as defined by the act of its creation, no executive nor judicial order can prevent the Legislature from acting upon the matter reported as it sees fit. Prohibition does not lie against the legislative bodies nor their instrumentalities. We are, therefore, not confronted with the questions briefed concerning the jurisdiction of the Court of Claims. Of course it is that court's duty to restrict its activities to the powers conferred upon it, but a needed correction lies with the Legislature. The nature and functions of the West Virginia Court of Claims should not be confused with those of the United States Court of Claims which does exercise judicial powers. Although its judgments are not collectible by process against the United States, they are certifiable to and reviewable by the Supreme Court of the United States. Another decided difference is that it does not hear claims sounding in tort. See 8 Fed. Code Anno. (Title 28, Ch. 7) 1.

We think it unnecessary to discuss the effect of Section 35 of Article 6 of our Constitution, and whether that provision is intended to prevent causes of action or grounds of relief from arising against the State or simply to prevent their enforcement against the State, leaving the question regarding the existence of causes of action in court to be dealt with by the common law rule to the effect that they do not arise as against the sovereign. 29 Am. Jur. 288.

Returning to what we regard as the question upon which the decision here turns and not attempting to dispose of a number of the questions briefed and argued because, in our opinion, they are not relevant, we believe the question of whether the Legislature has declared this claim to be a moral obligation of the State of West Virginia is decisive. The Legislature has not so stated unless placing the item in the Budget Bill can be so applied. The wording of the bill in that regard is as follows: "Adkins, Roy H., Admr. of Estate of Roy Herbert Adkins, Jr. deceased—$3500.00." The Legislature did not express its judgment concerning the existence of a moral obligation on the part of the State, either in the affirmative or negative, unless that is a matter that may be arrived at by implication from the fact that it did appropriate. We think that the statement of the question of whether a moral obligation of the State may be acknowledged indirectly requires no discussion, but that necessarily a declaration of that consequence requires a distinct and express enactment based upon its own conclusion of fact, stated by the Legislature preferably in an enactment separate and distinct from the appropriation bill that carries the grant.

Since it nowhere appears that the Legislature found the relator's claim to be a moral obligation of the State of West Virginia, the peremptory writ will be refused.

*Writ refused.*

Fox, JUDGE, concurring:

I concur in the opinion prepared by Judge Kenna, both as to the result, and, in general, with the views expressed therein, but I would not rest the decision solely on the failure of the Legislature, by specific enactment, based on its own conclusion of fact, to declare whether or not a moral obligation exists to pay the claim asserted by the relator. I would go to the heart of the issue presented, and base the decision upon what I conceive to be a proper basis on which it should rest, namely, that the failure

of the State Road Commission to install and maintain guard rails and danger signals, and provide and maintain a marked center line at the point of the accident here involved, is not negligence on the part of the Commission on which it can be said that a moral obligation arises therefrom for which the Legislature has the right to appropriate public funds.

It is settled law that the Legislature may appropriate money for a moral obligation where some public purpose is served; but it is equally well settled that it may not appropriate public funds for a private purpose. Within constitutional limits, the Legislature is vested with very broad power in the appropriation of public funds, and only in extreme cases will Courts interfere with the exercise of such powers. What is a public or a private purpose is, ordinarily, within the discretion of the Legislature to decide; but in case of abuse of that discretion may become a judicial question. In *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, this Court held:

> "Whether an appropriation is for a public, or a private, purpose is a judicial question; but if it does not clearly appear from the act of appropriation that it is for a purely private purpose, the court can not so decide. If any doubt exists as to whether it is for a public or a private purpose, the court must uphold the legislative act."

The Legislature may not declare that a public purpose which is clearly a private one. It cannot, by its mere fiat, make black white. *Ohio Oil Co.* v. *Wright*, 386 Ill. 206, 53 N. E. 966.

In the case before us, unless a moral obligation is shown to exist, the challenged appropriation must fall. In the peculiar situation here presented no moral obligation can be said to exist, unless we hold that there was a non-conformance of some specific duty resting upon the State Road Commission, furnishing a basis for the contention that the failure to perform such duty was negligence. A moral obligation to appropriate money may arise in other ways, but not in the case under consideration.

Therefore the question is: Was the failure of the State Road Commission to install and maintain guard rails and danger notices at the point of the accident, and to mark, at the same place, the center line, negligence of any kind or character? I do not think that it was. In the first place, no statute requires the Commission to install and maintain guard rails, notices of danger, and to paint center lines, at any point on any state highway, primary or secondary, and no decision of this or any other Court, which is cited or can be found, places that duty on the State. The case of *Wells* v. *County Court*, 85 W. Va. 663, 102 S. E. 472, relied upon by the relator, is not applicable to this case, for the reasons set out in Judge Kenna's opinion. Aside from this, the very nature of the obligation of the State, in respect to the construction and maintenance of its highways, precludes the idea that its failure to exercise discretion in respect to a particular location, as to whether it will or will not provide guard rails, center lines or danger signals, is an act of negligence. It is, of course, a matter of common knowledge that our system of state highways, primary and secondary, covers many thousands of miles. The Road Commission, in its discretion, has embarked upon a plan of installing guard rails at what are supposed to be dangerous points on highways of both classes, and of painting center lines and using danger signs; but, as stated above, it is merely carrying out its general duties to make the roads of the State as safe as possible, as distinguished from some mandatory duties imposed upon it by the Legislature. It is limited in the amount of money it can spend on the construction and maintenance of highways and the protection of those who use them. In this situation, it must necessarily exercise a discretion as to what roads, or points on roads, should be protected by guard rails, danger signs and painted center lines. It is also well known that places of danger exist at innumerable locations along our public highways, particularly our secondary roads. This being a mountainous country, many of these roads are narrow, with steep grades and sharp curves. Considering the financial limi-

tations placed upon the Road Commission, it would seem to be impossible to take care of all of these defects at one time, or even in one year, even if the labor and supplies situation made it otherwise possible. In the very nature of things, the Road Commission must be permitted to exercise a discretion as to where public money should be expended in providing guard rails, danger signals and center lines. All these considerations, and many others which might be mentioned, seem to me to call for a holding that the mere failure of the Commission to place guard rails, danger signs and painted lines at any particular point among the literally thousands of points in the State where such protection should be afforded, is not negligence on which any contention may be made that a moral obligation rests upon the State to compensate persons injured by reason of such failure. Certainly where the Road Commission is vested with the discretion, in matters of this character, it cannot be negligence that it selects for safety measures one point over another. I do not mean to say that situations may not arise where the failure of the Road Commission to properly maintain a highway and guard against accidents, occasioned by the condition of the road, may not be treated as such positive negligence as to create a moral obligation for which the Legislature may appropriate money to cover damages which proximately result therefrom. But here we have a simple proposition: No fault was found with the road, but only that certain precautions had not been taken to guard against accidents at the particular point, that point being only one of many points, some possibly of even greater danger. If we should award this writ the Legislature would hereafter be given authority, and, if this precedent be followed, would be required to compensate every person injured on the highways of this State resulting from the failure to maintain, in a safe condition, every mile of highways, primary and secondary. There is no halfway place. I would, therefore, deny the writ on the additional ground that the State was guilty of no negligence which could be made the basis of a moral obligation, to meet

which the Legislature would be authorized to appropriate public funds.

I am authorized to state that Judge Lovins concurs in the views herein expressed.