ROBERT L. BLAND, Judge.
*254 In this case, the claimant, S. E. Lent, of Leroy, Jackson county, West Virginia, maintains his right to have an award of $500.00 of public money, against the state road commission. He owns and resides upon a small farm of forty-one acres, situate on the waters of Fallen Timber, in Ravcnswood district of said county. He affirms that he relies upon his said farm, and particularly his garden and truck patch, for food for his table. He prosecutes his said claim for damages alleged to have been caused by the negligence and omission of duty of the employees of the road commission. The state contests his claim. There is a well-recognized legal maxim, which reads: “The proof lies upon him who affirms, not upon him who denies.”
The facts proved by the evidence introduced upon the investigation and trial of the claim may be summarized as follows:
Claimant’s farm abuts upon the stream of water known as Fallen- Timber, which is traversed by a state secondary road, and, at least at one point on the rou'e, the stream bed and the roadbed are the same. Claimant had, planted and growing, a good garden about thirty feet from his residence, and not far distant from the road and stream. The principal portion of the farm was steep. Adjacent to and above claimant’s land is a tract of land owned by one E. M. Knotts. Some years ago there was a heavy slip in the earth on the Knotts’ land. On the night of Saturday, June 1, 1946, floodwaters ran down over the Lent land to the road. About six o’clock on the morning of Sunday, June 2, 1946, a slip occurred on the Knotts land, which was a continuation of the slip which had previously taken place thereon, and from, that hour until about four o’clock in the afternoon rocks, trees, dirt, etc., ran from the Knotts land over claimant’s land into the road. This mass of earth and other materials spread out on the road for a distance of approximately two hundred and fifty feet, and for a width of forty feet. It was about six feet in depth.
Claimant, apprehending that if a heavy rain should occur his garden would be completely destroyed, immediately communicated with Creed Carmichael, the road commission’s county superintendent. On Monday morning following the heavy *255 slip of earth Mr. Carmichael and Mr. O. C. Hill went to the scene and viewed the condition of the road. The county superintendent agreed that something should be done to clear away the debris, in order to avoid damage in case of flood to claimant’s garden. He sent five employees of the road commission to the Lent property on the following day. They chopped brush and did what they could to relieve the situation and let the water out of the road but, on account of the.extraordinary mass of earth and other substances which had been deposited, it was impossible to clear the road. In order to remove the obstruction, it was apparent to the road officials that it would be necessary to bring in machinery. The work necessary to be done to remove the huge.mass of earth from the road could not be done by pick and shovel. The water from Fallen Timber stream caused the earth deposited upon the highway to become "soupy,” as described by the witnesses who testified. There was no machinery suitable for the removal of the obstruction immediately available. There were between five hundred and six hundred truckloads of dirt and logs in the highway, part thereof being already on claimant’s garden or truck patch. The road commission’s county superintendent concluded, after a personal inspection of the highway, that it would be necessary to have a shovel to remove the earth from the road. This was after he had sent a foreman and five crewmen to examine the highway and determine that only a shovel could remove the obstruction. There was no shovel that could be used in Jackson county. On Wednesday, the 5th of June, 1946, the district engineer for the road commission at Parkersburg, accompanied by the maintenance superintendent for three counties, including Jackson county, who was in charge of equipment, visited the highway on which the earth from the slip was deposited, and agreed that a shovel would be necessary for its removal. The nearest point from which a shovel could be obtained was in Wood county. The district engineer directed a shovel to be sent to Jackson county as soon as possible. The shovel intended to be used was at the time being used on the north fork of Lee Creek, in Wood county, about fifty miles from the slip in question. The shovel could not be immediately *256 removed to Jackson county, since it was being used on a road in Wood county, which had been closed and the work on which was necessary to be completed before the shovel could be sent to Jackson county. This shovel was, however, sent to Jackson county as quickly as it was possible for it to be released from the necessary work in Wood county. The only other shovel which would have been available for use in Jackson county was a truck shovel that could not be operated in the slip, on account of the condition of the material of the slip. As soon as the shovel could be removed, however, it was sent to Jackson county to remove the slip of earth from the highway. Before its arrival, however, and on the 13th of June, 1946, there was a heavy rain, and on the- 19th of June there was a further, heavier rain. The water produced by these two rains backed up on claimant’s garden and practically destroyed all of the growing products thereon, and permanently damaged the soil.
Claimant contends, therefore, that the failure of the road commission to remove the obstruction from the highway, caused by the slip from the Knotts land, before the two rains in question occurred, constituted negligence and omission of duty, entitling him to compensation for the losses which he has sustained.
Under the evidence, we cannot conclude that the state or the said state road commission was in any respect responsible for the slip on the Knotts land which deposited the earth on the highway, or that the road commission was in any way guilty of an omission of duty in removing the obstruction from the highway. It- is clearly apparent that the road commission acted as promptly as it was possible for it to do in clearing the road. It could not reasonably be expected that it would leave the work in Wood county where a road was closed and remove the shovel to Jackson county earlier than it actually did so. It is unfortunate that claimant should have sustained the loss of his garden and truck patch, representing a season’s work, but it does not follow that he has a right to compel the state to compensate him for such losses. There is no moral obligation upon the part of the state which can be enforced upon equitable prin *257 ciples alone. 48 Am. Jur., States, Territories, and Dependencies, Section 73. The Legislature has unquestioned power under circumstances to make appropriations of the public moneys, but in the recent case of State ex rel. Adkins v. Sims, Auditor, 127 W. Va. 786; 34 S. E. 2d 585, the Supreme Court of Appeals of West Virginia has held:
“In order to validate a legislative appropriation of public money for private use it must affirmatively appear that the Legislature in making the appropriation has found that it was necessary in order to discharge a moral obligation of the State."
We do not perceive that any such moral obligation exists in the instant case.
In the construction and maintenance of its highways the state exercises a governmental function. Under general law, as the writer of this statement understands, the state is not liable for the negligence of its officers, agents or employees, while engaged in the exercise of a governmental function, in the absence of a statute making it liable therefor. We have no such statute in West Virginia. It would seem that if the Legislature intended to create such liability it would enact a statute to that effect.
We are constrained under all the evidence in this case to absolve the road commission from negligence in removing the road obstruction from the highway under consideration, and to acquit it of any omission of duty in the premises.
An award is therefore denied and the claim dismissed.