ROBERT L. BLAND, Judge.
Claimant S. P. Catron asserts his claim against the state road commission, a governmental agency of the state of West Virginia, for the sum of $62,240.00, which amount he contends is due him by way of compensation for the property loss sustained by him as the direct result of the *186 wrongful conduct of employes of the said state road commission. He represents to the court that he is the lessee and in possession of a boundary of land containing seventy acres, more or less, lying adjacent to and on the northerly side of a portion of that part of the state highway system designated as West Virginia-United States route No. 60, and located on the westerly side of the town of Milton in Cabell County, West Virginia, and commonly known as the Malcolm Springs Farm, pursuant to a lease originally executed by C. P. Nelson and wife, and subsequently by James Houghton Nelson and Richard H. Williams, as trustees. Said boundary of land is presently owned by said James Houghton Nelson and Richard H. Williams, as trustees, under a certain indenture of trust dated the 28th day of December, 1938. Upon said property approximately 141,000 valuable evergreen Christmas trees were growing, all of which were owned by claimant and the said.. James Houghton Nelson and Richard H. Williams, as trustees.
Claimant states that on or about the 17th day of April, 1947, the state' road commission of West Virginia, acting through its servants and employes, was engaged in clearing the right of way by removing from the area on each side of said West Virginia-United States route No. 60 the trees and brush thereon accumulated adjoining said lands leased by him. He further contends that in order tr clear said right of way fires were maintained for the purpose of destroying the said trees and brush collected along said right of way adjoining his leased premises. He maintains that it was the duty of the state road commission, acting through its servants and employes, in clearing said right of way and maintaining fires thereon to provide the same with proper protection so that fires could not be communicated from said right of way to his said leased premises, whereby said evergreen trees would be consumed and destroyed, and to maintain and supervise said fire in a prudent, careful and proper manner, having due regard for the safety of the property of other persons, including *187 himself, but that such precautionary measures were not taken. Claimant charges that on the contrary the state road commission negligently, carelessly and in reckless disregard of the safety of the property of other persons, including himself, along and adjacent to said highway, permitted and caused said fire situate on said right of way to be managed and supervised so that the same did communicate from said right of way to his said leased property and evergeen Christmas trees, thereby starting and causing said land to be set on fire, which quickly spread into a conflagration and burned over nearly the entire boundary of land, thereby consuming and destroying hi; evergreen trees.
The court of claims conducted a careful and thorough investigation of claimant’s said claim. It is made clear by the evidence that he has suffered a distinct and severe loss of property. It is shown that he had a market for his growing Christmas trees, many of which were several years of age. The record discloses that he furnished and sold these trees on the land for sixty-five cents for each tree. Claimant showed that he had evergreen trees growing on the premises as follows:
1935 83,000 1942 15,000
1939 • 15,000 1943 5,000
1940 10,000 1944 11,000
1941 10,000 1945 2,000
It is also made to appear that he had from time to time made various sales of said growing trees.
After the taking of the evidence in the case the members of this court visited the scene of the fire and made personal inspection of the extent of the damage done. They beheld a vast area of devastation and destruction.
A feeble attempt was made to show that the state was in no way responsible for the fire, and that such fires as had been maintained along the right of way of the thor *188 oughfare had been a week earlier than the time when the conflagration occurred that destroyed claimant’s property. We are of opinion that it is abundantly and very satisfactorily shown by the evidence that the fire which destroyed claimant’s Christmas trees originated from the point on the road or highway where brush and other debris was burned by employes of the state road commission. The fire on the highway was within six feet of claimant’s growing trees. It would seem to us that the employes of the road commission would be charged with notice of the in-flamability of evergreen or pine trees. No precaution whatever is shown to have been taken by the state in order to prevent the fire on the road right of way from communicating to the premises of claimant. After the fire on the right of way had been started the road supervisor left two employes to watch it. One of those employes has since died. The survivor testified in the case. He stated that he and his companion remained on the highway until everything placed on the fire had burned to ashes. A witness for claimant who testified impartially but very positively said that at the time the fire was raging on the premises of claimant he saw burning embers of logs at the point where the fire was started on the highway.- The deposition of Richard L. Weaver, at U. S. Naval Training Center, Great Lakes, Illinois, was taken on behalf of claimant. This witness resided on the leased land at the time the evergreen Christmas trees were destroyed. We are of opinion that his deposition very clearly establishes the origin of the fire.
Having found and being firmly of opinion that the fire which destroyed the growing evergreen Christmas trees of claimant in such vast numbers was due to the wrongful and negligent conduct of employes of the state road commission, the question immediately arises whether or not in view of recent holdings of the Supreme Court of Appeals in West Virginia an award in this case may be properly made; and if so in what amount in should be. *189 In the case of State ex rel. Adkins v. Sims, Auditor, 34 S.E. 2d 585, it is held by our Court of Appeals as follows:
“In order to validate a legislative appropriation of public money for private use it must affirmatively appear that the Legislature in making the appropriation has found that it was necessary in order to discharge a moral obligation of the State.”
In the case of State ex rel. Cashman v. Sims, State Auditor, 43 S. E. 2d 805, it is held by the Court as follows:
“To constitute a valid declaration by the Legislature of the existence of a moral obligation of the State for the discharge of which there may be an appropriation of public funds in the interest of the public welfare, it is necessary, as a general rule, that there be an obligation or duty by prior statute created or imposed upon the State, to compensate a person for injury or damage sustained by him by reason of its violation by the State or any of its agencies, or to compensate him for injury, damage or loss incurred by him in or by his performance of any act authorized or required by such statute; or an obligation or a duty, legal or equitable, not imposed by statute, but created by contract or resulting from wrongful conduct, which would be judicially recognized as legal or equitable in cases between private persons.”
It is also held by our Supreme Court, in the case of Woodall v. Darst, Auditor, 71 W. Va. 350:
“The Legislature is without power to levy taxes or appropriate public revenues for purely private purposes; but it has power to make any appropriation to a private person in discharge of a moral obligation of the State, and an appropriation for such purpose is for a public, and not a private purpose.”
*190 The Supreme Court of Appeals of West Virginia has not at any time held that the Legislature is without power to ascertain, find and declare the existence of a moral obligation of the state that will support and warrant its appropriation of public revenues. What the Court has held is set forth in point two of the syllabi in the case of State ex rel. Adkins v. Sims, Auditor, 46 S.E. 2d 81, reading as follows:
“2. Whether an appropriation is for a public or a private purpose depends upon whether it is based upon a moral obligation of the State; whether such moral obligation exists is a judicial question; and a legislative declaration, declaring that such moral obligation exists, while entitled to respect, is not binding on this Court.”
We find further in the case of Guilford v. Chenango County, 13 N. Y. 143, at page 149, the following pertinent language:
“The legislature is not confined in its appropriation of the public moneys, or of the sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the state. It can thus recognize claims founded in equity and justice in the largest sense of these terms, or in gratitude or charity. Independently of express constitutional restrictions, it can make appropriations of money whenever the public well being requires or will be promoted by it; and it is the judge of what is for the public good.”
The Legislature is not prevented from recognizing claims founded on equity and justice though they are not such as could have been enforced in a court of law if the state had not been immune from suit. The basis for such allowance is the moral obligation or the equity arising out of the facts. Munro v. State, 223 N. Y. 208.
We understand that the appropriation of public revenues *191 for public purposes is within the police power of the state.
After the fire in question Mr. George I. Simons, then state claims agent, made an investigation as to its origin and extent. By appointment he met and discussed the situation with claimant. On the hearing of the case he testified on behalf of the respondent as follows:
“Q. When next did you discuss or confer with the claimant, Mr. Catron, in regard to this fire?
A. Mr. Catron was at my office on two or three occasions as he would be in Charleston. I made arrangements to meet him and talk with Commissioner Worthington and Mr. Radcliffe concerning a settlement. I talked to Mr. Catron, went to Huntington, met him, and we went from there to the office of the Nelson Trust, realty owners, and there met Mr. Williams, who is listed as trustee — R. H. Williams. That was in Juñe, 1947.
Q. What was the result of that interview?
A. We reached an agreement as to the amount of damages that the State Road Commission would pay. It was reached in the presence of and with the approval of Mr. Williams and Mr. Ca-tron. Mr. Williams stated that the property, the trees themselves, had been managed by Mr. Catron, and, therefore, he was in position that whatever he would do would be perfectly all right with him.
JUDGE BLAND: Q. Was Mr. Williams one of the trustees?
A. He was, or he was at that time.
MR. SPILLERS: Q. What figure, if any, did you and Mr. Catron or any of the others interested arrive at at that time?
A. One thousand dollars.”
We think it appears from the record that Mr. Simons, *192 as state claims agent, made investigation of the origin and damage done by the fire in question, and with knowledge of all the facts was of opinion that the state was responsible for the damage suffered by the claimant in the burning and destruction of his evergreen trees and offered the sum of $1000.00 in full settlement of such damage, and that his offer was accepted by claimant; and that steps were accordingly made to make such payment through the office of the road commission. It appears, however, from the records that after such agreement was made Mr. Simons and Mr. Spillers, of the attorney general’s office, visited the state auditor for the purpose of learning whether he would pay or issue his warrant for the payment of such agreement. Why this was done is not made clear to the court. While we recognize that the opinion in the case of Woodall v. Darst, 71 W. Va. 350, concedes the right of the auditor to challenge the validity of an appropriation made by the Legislature, it is strange that he would deny the right of payment before an appropriation is made and without knowledge of the facts involved in a particular case. The court of claims was created for the purpose of investigating the merits of claims asserted against the state and making recommendations accordingly to the Legislature. The Legislature is the only tribunal in the state that has power under the law to make apprporiations of the public revenues. The Legislature has unquestioned power, in circumstances and within the limitations of law, to make appropriations of public moneys in discharge of moral obligations of the state, subject, however, to the right reserved by the Supreme Court of Appeals to declare what constitutes a moral obligation of the state.
We are of opinion from our investigation of the instant case that the effect of the negligence of employes of the state road commission and their failure to employ proper precautionary measures to prevent the fire that destroyed 'countless hundreds of claimant’s evergreen Christmas trees amounted to a confiscation of his property, sufficient *193 to warrant an appropriation by the Legislature in his favor in discharge of a moral obligation on the part of the state in the interest of public welfare. Such an award would not, we think, amount to a gift of the state’s money to the claimant. It would not constitute or be a gratuity. Eather it would be a reasonable compensation to him for the unwarranted confiscation of his property. The amount of the award which we shall make is based on what we conceive to have been an agreement made by the parties themselves in settlement of all damages suffered and sustained. There are other facts in the case which we have fully considered such as the planting of thousands of the evergreen trees by an agency of the government without cost to claimant. We may observe at this point that after the agreement of settlement had been made between Mr. Simons and claimant, with the approval of Mr. Eichard H. Williams, trustee, and after the visit to the auditor’s office, above referred to, and his statement that he would not pay the claim, Mr. Williams addressed a letter to Mr. Simons inquiring why the agreement had not been consummated. To deny to claimant an award in the premises and to say that he should bear the tremendous loss of property which he has sustained would be shocking to the public conscience. We think that his claim is meritorious and that the Legislature should make an appropriation in his favor and ascertain and declare that it is in discharge of a moral obligation of the state.
An award is therefore made in favor of claimant S. P. Catron for the sum of twelve hundred and fifty dollars ($1250.00).