FLORA BEATRICE THOMPSON, *An Infant, etc. v.*
CITY OF CHARLESTON

(No. 8481)

Submitted February 23, 1937. Decided March 23, 1937.

*Salisbury, Hackney & Lopinsky* and *Lon G. Marks,* for plaintiff in error.

*Philip H. Hill* and *P. G. Meador,* for defendant in error.

KENNA, PRESIDENT:

Flora Beatrice Thompson, an infant of nine years, by her next friend, sued the City of Charleston in trespass on the case. She had fallen at a point in Ash Street between Magazine Street and Bigley Avenue where a section of curb twelve inches long and three and one-half inches deep had been left out in the original construction of the street. The street itself was paved with concrete, as was the sidewalk with the exception of eighteen inches or two feet just inside the curb and a like space between the sidewalk and the property line. The plaintiff, with her older sister, was going on an errand from their nearby home to a neighbor's about nine o'clock in the evening sometime in April, 1934. They ran part of the way, but as they came to Ash Street they slowed down to a fast walk, crossed the street and going onto the sidewalk

at the point where the gap in the curb was located both children fell. The older sister was not injured. The cause of her fall is not made plain. The testimony is that the plaintiff fell just at the gap in the curb and struck her right knee against the edge of a metal curb box which stood at that point in the parkway between the curb and the outside edge of the sidewalk. Her right knee was severely cut.

There was a verdict for seven hundred and fifty dollars, which the trial court set aside and to that judgment the plaintiff below prosecutes this writ of error.

There are several assignments of error that we do not believe it is necessary to discuss, because of the fact that we have concluded, after very careful consideration and an exhaustive investigation that discloses practically no cases in point, that the gap in the curbstone described in this case is not sufficient to render the street unsafe for travel in the ordinary mode by day and by night within the meaning of Code, 17-9-33, under which this action is brought.

It has been argued by defendant in error that because the condition of this curbstone was a part of the original construction of the street, it does not constitute a condition making the street out of repair in the sense contemplated by the statute. We do not wish it understood that we are holding that the question of whether a defect in the street was due to its original construction or to lack of maintenance is determinative of anything material under the statute in question. If the city sees fit to build a street which, by reason of the manner in which it is originally constructed, is unsafe for travel, we do not believe that the city could be excused from liability upon a simple showing that the dangerous condition of the street had been due to its original construction. Neither do we believe that in order to avoid that result, the plaintiff in an action of this sort must show that the original plan for the construction was negligently adopted by the city. The question, as we have often said, is not one of negligence but one of absolute duty on

the part of the city, and it matters not what caused the unsafe condition of the street.

We are resting the decision of this case upon the fact that we do not believe that this gap in the curbstone rendered the street unsafe for travel as contemplated by the statute. The gap was not rough and broken, but was finished and smooth. It had been purposely left at a point where the curb had been slightly curved on account of a standing tree. There was nothing inherently dangerous about the condition, and apparently the only way a person could be hurt by it was by making a misstep in the assumption that a curb was there, a fact which in itself would usually display a lack of care on the part of the pedestrian.

But it is said that this street was badly lighted on account of the shadow of a nearby tree which made it almost impossible to see the curb and opening, and the jury, by its verdict, probably indicated that they were impressed with this contention. If the duty of the city were based upon negligence, or were otherwise relative, it might be that this would be an argument of consequence. But the city's duty is not that. It is absolute. *Roth* v. *City of Moundsville*, 118 W. Va. 283, 190 S. E. 332. And in an absolute sense we do not see how the presence or absence of light could affect the condition of the street. The city is not being sued for failure to light the street. There is no duty on the city to do that. *Holsberry* v. *Elkins*, 86 W. Va. 487, 103 S. E. 271.

While it is true that a street must be maintained by a municipality so that it is safe for travel in the ordinary mode by day and by night, it does not follow that all parts of the street have to be kept in the same condition. This would be impossible. A pedestrian crossing between intersections, going from a sidewalk over a curb and down into the street and up again from the lower level to the higher on the opposite side, surely cannot expect the same degree of safeness as a pedestrian would be entitled to expect who was walking along a smooth sidewalk. Neither do we think pedestrians are entitled to expect that there will be a curb at all points along the

sidewalk. Driveways going into the street over broken curb lines have become too common and essential for such a rule to prevail. It is not unusual to see the curb line varied or the curb dispensed with for a space to prevent the ruination of some beautiful tree. The testimony indicates that this was the origin of the gap in the curb which, it is contended, caused the little girl in this case to fall.

We do not wish to be understood as holding that a city owes no duty to keep existing curbs in its streets in such repair as to be safe for such kinds of travel as may properly pass over them. Nor do we hold that a hole in the street at or near the curb line might not cause an actionable injury. Neither situation is before us in this case.

There is one other question of importance to be disposed of. The charter of the City of Charleston requires that all claims for damages due to the negligence of the city, its officers or employees shall be filed with the city clerk not more than thirty days after the injury complained of in non-fatal cases. Plaintiff below did not allege and prove compliance with this requirement. Defendant below did not plead non-compliance, but attempted, upon motion to set aside the verdict, to take advantage of the omission. On the motion to set aside the verdict, the trial court permitted the plaintiff to prove that the notice had actually been given. In the opinion of the trial court the question was treated as matter of defense having no part in the case unless pleaded by the defendant. In this conclusion, we believe the learned trial judge to have been wrong.

The provision of the charter of the City of Charleston in question is as follows:

> "Sec. 95. No action shall be maintained against the City of Charleston for damages for a personal injury alleged to have been sustained by reason of the negligence of the city or of any officer, agent or employee thereof, unless a written verified statement of the nature of the claim and of the time and place at which such in-

> jury is alleged to have been received shall have been filed with the city clerk within thirty days after the cause of action, shall have accrued. The cause of action shall be deemed to have accrued at the date of the sustaining of the injury except that where death results therefrom the time for the personal representative to give notice shall run from the date of death. An action at law for damages for personal injuries or death shall not be commenced until the expiration of thirty days after the filing of the notice as provided in this section."

Such provisions have been construed by the courts both as furnishing mere matter of defense which, to be availed of, must be pleaded and proved by the defendant, and as creating a condition precedent to the bringing of an action, which cannot be waived by the municipal authorities and which must be pleaded and proved by the plaintiff. An example of the former line of decisions is *O'Connor* v. *City of Fond du Lac*, 109 Wis. 253, 85 N. W. 327, 53 L. R. A. 831. This holding, however, does not seem to correspond with that of the later case of *Hay* v. *City of Baraboo*, 127 Wis. 1, 105 N. W. 654, 115 Am. St. Rep. 977, 3 L. R. A. (N. S.) 84, where it was held that non-compliance with a similar statute extinguished the cause of action. But it seems to us, certainly in view of the wording of the provisions quoted from the charter of the City of Charleston, that the better rule is that announced in such cases as *Winter* v. *City of Niagara Falls*, 190 N. Y. 198, 82 N. E. 1101, 123 Am. St. Rep. 540, and note, 13 Ann. Cas. 486, wherein it is held that compliance with such a statute is a condition precedent to the right of the plaintiff to sue. Like all matters of this sort that depend for their decision upon the construction of particular language, it is difficult to discover cases exactly in point. For the same reason, an extended discussion of decided cases would not materially assist us. We do not wish to be understood as going beyond the construction of the provision of the charter of the City of Charleston that is before us. We are of the opinion that this provision sets up conditions precedent to the

right of the plaintiff to sue which must be alleged and proven as a part of the plaintiff's case, and that failure to allege and prove compliance with the section is a fatal defect that may be taken advantage of even where it is raised for the first time after verdict. It seems to us that this is the necessary meaning of the last sentence of the section in question requiring that an action shall not be commenced until the expiration of thirty days after the filing of notice as required.

It will be observed that the section in question in its express language covers only cases of *negligence* against the city. The case at bar arises, not from negligence, but from the breach of an absolute statutory duty. We are of the opinion, however, that the plain reading of the section in question makes it cover personal injury and death cases resulting from the breach of any kind of duty on the part of the city, and that to say that a personal injury case arising from breach of the statute which requires the city to keep its streets in safe condition for travel, is to be technically distinguished from a negligence case so that the former does not come within the purview of the charter provision, would be to rob that statute of the greater part of its practical application and true meaning. We are of the opinion that, if there had been no other ground, the verdict should have been set aside for this reason.

In accord with what has been said, the judgment of the circuit court will be affirmed and the case remanded.

*Affirmed.*