83 S.E.2d 505 (1954)
Mary Elizabeth BURCHAM
v.
CITY OF MULLENS, etc.
No. 10611.
Supreme Court of Appeals of West Virginia.
Submitted January 19, 1954.
Decided March 9, 1954.
Rehearing Denied May 21, 1954.
Dissenting Opinion October 4, 1954.
*507 D. Grove Moler, Ray Toler, Mullens, for plaintiff in error.
*508 No appearance for defendant in error.
*506 RILEY, Judge.
Mary Elizabeth Burcham instituted in the Circuit Court of Wyoming County this action of trespass on the case against The City of Mullens, a municipal corporation, to recover damages for personal injuries alleged to have been sustained by her in a fall on a board platform on a sidewalk on Oak Street, a public street in the City of Mullens, which the plaintiff alleges was `out of repair" within the meaning of Code, 17-10-17. To a judgment in plaintiff's favor in the amount of one thousand dollars, based upon a jury verdict, the defendant municipality prosecutes this writ of error.
The pertinent provision of the statute reads: "Any person who sustains an injury to his person or property by reason of any road or bridge under the control of the county court or any street or sidewalk or alley in any incorporated city, town or village, being out of repair may recover all damages sustained by him by reason of such injury, in an action against the county court, city, town or village in which such road, bridge, street, sidewalk or alley may be, * * *."
About four-thirty in the afternoon of November 21, 1950, the plaintiff, a stout, middle-aged woman, suffering from hypertension and accompanying dizzy spells, fell on a public board sidewalk, consisting of a flight of steps and platform built on a steep hillside between Poplar Street and Guyandot Avenue in the City of Mullens, in an area of the city referred to in the record as "Oak Street". At the time and place the plaintiff was injured many of the steps of the sidewalk were broken or missing, and a portion of the sidewalk was sagged and tilted, which facts were known to the plaintiff. When plaintiff entered upon the sidewalk, it had been snowing, and patches of snow, ice, slush and melted water lay on various parts of the sidewalk. Plaintiff's testimony, however, establishes that she did not fall at any of the apparent defective or dangerous places in the sidewalk, but upon a level board platform in which there were no parts broken or missing, and the evidence conflicts on the question whether there was any snow, ice, obstruction or unevenness of any kind.
In her declaration plaintiff alleges that the unexpected and sudden tilting and sagging of the sidewalk caused her fall. In her testimony she asserts that she did not stumble, slip or step on the end of a plank; that the sidewalk and steps were not protected by a handrail, and plaintiff volunteered in her testimony that if there had been a handrail along the sidewalk, she would not have fallen.
The evidence shows that when the wooden platform upon which plaintiff fell was replaced by the city some time after plaintiff was injured, the old platform was taken out as a single unit, indicating that it did not contain any loose planks or underpinning.
Plaintiff's husband, H. S. Burcham, a witness called on behalf of plaintiff, testified that the sidewalk had been on Oak Street for approximately twenty-two years; that it had been rebuilt a couple of times, in 1938, when it was entirely rebuilt, and again after plaintiff was injured in 1951. This witness testified that he had examined the platform shortly after plaintiff was injured; that he entered on the sidewalk at Poplar Street, went down a flight of two or three steps, and stepped on a platform designated in the record as "platform B", evidently the platform upon which the plaintiff fell; and that "Then the platform gave with me, the lower side of the platform", that is, the right side as the witness walked out on it. When the platform gave under witness' weight, he stepped off and observed a rock which had blood on it. This witness testified in detail that when he stepped on the platform to try it with his weight, "* * * it gave considerably"; that upon minute examination witness discovered that a stringer or support for the platform on the right side thereof, that is, the side which gave under plaintiff's *509 weight, had a soft wet place, directly under the part of the platform which gave under witness' weight; and that in an endeavor to render the platform safe, witness placed a rock underneath the platform about six feet from the end and not quite at the soft spot, wedging it between another rock and the stringer, which witness testified strengthened the platform in some degree.
The first, second, and third grounds of error, set forth in defendant's brief, which is the only brief filed on this writ of error, bear on the question of liability, and may be tersely stated as follows: (1) that the platform, where plaintiff testified she fell, was not "out of repair" within the meaning of Code, 17-10-17, and that, therefore, the trial court should have sustained defendant's motions that the trial court direct the jury to find for the defendant and set aside the verdict; (2) the clear and decided weight of the evidence shows that plaintiff's injuries were not proximately caused by any defect in the lower stringer of the board platform on which plaintiff testified she fell; and (3) plaintiff is barred of recovery in this action because the evidence shows, as a matter of law, that plaintiff was guilty of contributory negligence.
The other assignments of error, as set forth in the petition for a writ of error, stated in seriatim are: (4) The court's action in overruling and not granting defendant's several motions for a mistrial because of the manner in which certain veniremen were questioned in the presence of others, and the erroneous disqualification and dismissal of two of the veniremen; (5) the giving of plaintiff's instructions Nos. 1, 2 and 2-A; (6) the refusal of defendant's instructions Nos. 1, 2, 2-A, 6, 8, 11, 14, 6A and 16; (7) the court's disqualification and dismissal of the two jurors, F. L. Gary and Jack Goode, on the voir dire, notwithstanding they were qualified and competent jurors; (8) the court's refusal to admit in evidence the letter of H. W. Dushkoff to City Attorney Ray Toler, dated June 11, 1951, wherein plaintiff's counsel for the first time asserts a claim for damages and describes the then believed cause of plaintiff's fall; (9) permitting the introduction of a map, "Plaintiff's Exhibit A", which showed the removal of the location of the platform from its position in a former trial of this action. This defendant's counsel assert was a surprise to defendant, and it was prejudicial error to have permitted plaintiff to use the map as if "Platform B", shown thereon, was the actual location of the spot at which plaintiff claims she fell; and (10) admission of general statements as to the "general condition of the whole sidewalk" without differentiation of the platform on which plaintiff claims she fell.
The initial question raised by defendant's first ground of error is whether the trial court erred in holding that the evidence is sufficient for the jury to find that the platform where plaintiff testified she fell was "out of repair", within the meaning of the phrase contained in Code, 17-10-17. On the premise that the evidence in this record was insufficient to sustain such finding, defendant specifies as error the rulings of the trial court in overruling defendant's motion for a directed verdict in its favor and in overruling defendant's motion to set aside the verdict and grant it a new trial. In a portion of the brief filed on behalf of defendant, defendant's counsel have arrayed numerous cases decided by this Court, in which this Court decided in each case whether there was sufficient evidence for a jury to find that a public street, sidewalk or alley of a municipal corporation was out of repair within the meaning of the statute.
Defendant's counsel cite Yeager v. City of Bluefield, 40 W.Va. 484, pt. 4 syl., 21 S.E. 752, an action for damages for injuries resulting from a fall caused by a defect in a street crossing, in which this Court reversed a judgment in plaintiff's favor based upon a jury verdict. In seriatim defendant's counsel cite Thompson v. City of Charleston, 118 W.Va. 391, 191 S.E. 547, in which an alleged gap in the curb of the sidewalk of a public street was held not to render the sidewalk out of repair; Burdick v. City of Huntington, 133 W.Va. 724, 57 S.E.2d 885, in which it was held *510 that a depression between adjoining concrete blocks in a public sidewalk, in which plaintiff caught her heel, rendered the sidewalk out of repair; Smith v. City of Bluefield, 132 W.Va. 38, 55 S.E.2d 392, in which this Court held that a slightly raised concrete block presented such an obstruction as would render a public sidewalk out of repair; Waggener v. Town of Point Pleasant, 42 W.Va. 798, 26 S.E. 352, where it was held that a projecting brick on an uneven pavement of a sidewalk did not render the sidewalk out of repair; Holsberry v. City of Elkins, 86 W.Va. 487, 103 S.E. 271, in which it was held that slippery ice over a slight slope raised by the trunk of a tree did not render a public thoroughfare out of repair; Roth v. City of Moundsville, 118 W.Va. 283, 190 S.E. 332, in which it was held that a slab in a sidewalk of a public street, which had been raised from three to four inches on the outside of the concrete pavement, and approximately two inches on the inside, so as to make a perpendicular "rise" in the sidewalk between the raised slab and the one next to it, the "rise" facing the direction from which the plaintiff was walking, rendered the sidewalk out of repair within the meaning of the statute, and on this basis this Court reversed a judgment in defendant's favor based upon a directed verdict; Campbell v. City of Elkins, 58 W. Va. 308, 52 S.E. 220, 2 L.R.A.,N.S., 159, in which recovery was upheld by this Court on the basis that plaintiff, while walking on a public board walk, slipped on a plank in a public board walk and broke it down, so that his right heel went into a hole caused by the breaking of the board, resulting in a dislocated ankle and the fracture of a bone in plaintiff's leg; and Moore v. City of Huntington, 31 W.Va. 842, 8 S.E. 512, in which this Court sustained a judgment based upon a verdict of the jury in plaintiff's favor, in which case liability was established on the basis that plaintiff was injured by the breaking of one of the planks of a public sidewalk, when she stepped on the plank.
From the foregoing it appears that many times the question of a municipal corporation's liability in an action for damages based on Code, 17-10-17, has been under consideration by this Court, but as the facts in the decided cases have been variant, the decisions of this Court based upon the facts and circumstances portrayed by the record in each case, have likewise varied. But in the decisions of this Court through the course of many years is the norm that though Code, 17-10-17, does not render a municipal corporation liable as insurer against injuries incurred by those using the public streets, sidewalks or alleys thereof, a street, sidewalk or alley of a municipal corporation is "out of repair" within the meaning of the statute if it is not in a reasonably safe condition for travel in the ordinary modes, with ordinary care, by day or night, and, as stated by this Court in point 4 of the Yeager case, the question is a practical one "to be determined in each case by its particular circumstances."
If, as defendant's counsel contend, there is sufficient evidence in this record for the jury to find, as it did by the verdict under consideration, that plaintiff's fall was caused by the sagging of the platform, under which plaintiff's husband found a lower stringer having a "soft spot" near the middle of the stringer, a question which we shall discuss under plaintiff's second assignment of error, this case, in so far as it bears on the question whether the wooden sidewalk was out of repair within the meaning of Code, 17-10-17, is governed by the decisions of this Court in the cases of Campbell v. City of Elkins, supra, and Moore v. City of Huntington, supra. In both of these cases this Court sustained a recovery in plaintiff's favor based upon a latent defect in a public board walk. In each of these cases plaintiff's injuries were caused by the breaking of one of the planks of a board walk, which so far as the record in each of these cases discloses, had a latent defect, which caused the plank to break under the injured person's weight. If, in fact, plaintiff was caused to fall on the wooden platform by reason of the sagging thereof caused by the soft spot in the lower stringer thereunder, the sidewalk, and in *511 particular the wooden platform, was out of repair within the decisions of this Court in the Campbell and Moore cases, and within the meaning of that phrase as used in Code, 17-10-17; and the defect in the stringer under the platform upon which plaintiff claims she fell being latent, the liability of the defendant municipal corporation for plaintiff's injuries, if such injuries are occasioned by the latent defect, is absolute, as held by this Court in point 3 of the syllabus of the Campbell case.
This brings us to the crucial question in this case, which bears upon defendant's liability, and is presented in defendant's second assignment of error, that: The weight of the evidence does not establish that plaintiff's injuries were proximately caused by the defect in the lower stringer of the board platform, where plaintiff testified she fell.
As there were no eyewitnesses to plaintiff's fall, the evidence in this regard, bearing on the question where plaintiff fell on the wooden sidewalk, depends to a large extent upon plaintiff's testimony. Plaintiff testified that she went down a pair of steps on the wooden sidewalk to the platform on which she said she fell, and that she "started out on the platform and got a little past midways, and then all at once it give way, and I fell. I started to fall down hill, and then I caught myself, and I fell this way. * * *"; the platform "* * * was not good. It looked like it was in good order, the platform, and I didn't step on the end of the plank, that one board there, it give way." After so testifying, plaintiff was asked by her counsel, "Look at Plaintiff's Exhibit A, platform A, and then thetell the jury which is the correct location of the platform at the time you fell and were injured on it?", to which plaintiff replied, "It was right at the corner of the wall, platform B, the platform started." Plaintiff's husband, in corroboration of plaintiff in testifying as to the examination which he made, testified that the examination concerned "Platform B". He testified in exact corroboration of plaintiff that when he walked on the platform the lower side of the platform, that is the right side, gave with his weight, and that he observed a rock "a little more than half way to the platform in an easterly direction a foot or two north * * * [with] blood on it."
The evidence, bearing on the place where plaintiff fell, and the condition of the platform upon which she says she fell as to snow and ice, conflicts in minor details. Thus there is evidence to the effect that plaintiff's glasses were found on the ground above the place where plaintiff says she fell. There is conflict in the evidence as to the location of the platform. Plaintiff, having been inquired of by her counsel concerning plaintiff's "Exhibit No. A", a map, dated May 21, 1952, showing the location of the walkway on Oak Street, after the platform had been rebuilt by the defendant municipal corporation, a short time after plaintiff was injured, testified that the platform on which she fell was farther up the hill than shown on "Exhibit No. A", and, as heretofore indicated, the evidence conflicts as to the condition of the surface of the platform as to snow and ice.
We, however, are of the opinion that there is sufficient evidence portrayed by this record from which the jury could have found, as it did, that plaintiff's fall, which resulted in her injuries was proximately caused by the latent defect in the stringer under the sidewalk upon which plaintiff testified she fell.
Defendant's position that plaintiff is barred of recovery in this action as a matter of law, because on the day she was injured she chose to enter upon the Oak Street steps and sidewalk, with knowledge of the then existing conditions, that the steps of the sidewalk were bad and that snow had fallen thereon, is based upon the postulate contained in point 4 of the syllabus of Shriver v. County Court of Marion County, 66 W.Va. 685, 66 S.E. 1062, 26 L.R.A.,N.S., 377, that: "A traveler, having two reasonably convenient ways for his journey, one of which is dangerous and the other not, assumes the risk of injury, if he uses the dangerous way, and cannot recover for any injury he may thereby sustain." *512 That in an action instituted by a traveler to recover damages against an incorporated city, town or village by reason of any street, sidewalk or alley thereof being out of repair, within the meaning of Code, 17-10-17, is barred from recovery, where the traveler has assumed the risk of a known danger, or, as stated in some of the cases, was guilty of contributory negligence is well settled in this jurisdiction. Hesser v. Town of Grafton, 33 W.Va. 548, 11 S.E. 211; Van Pelt v. Town of Clarksburg, 42 W.Va. 218, 24 S.E. 878; Slaughter v. City of Huntington, 64 W.Va. 237, 61 S.E. 155, 16 L.R.A., N.S., 459; Boyland v. City of Parkersburg, 78 W.Va. 749, 90 S.E. 347.
On the basis of these authorities defendant's counsel contend that though plaintiff lived on Poplar Street in the City of Mullens between Oak Street, on which was the wooden sidewalk upon which plaintiff claims she was injured, which led to Guyandot Avenue, whereon was located the store of Sands & Company, plaintiff's destination, and Woodland Avenue, which likewise led to Guyandot Avenue, she nevertheless chose the more dangerous way by proceeding on the sidewalk on Oak Street under the then existing conditions. The record, however, discloses that Woodland Avenue was paved with cobblestone, covered with a layer of asphalt, and like the sidewalk over which plaintiff was traveling at the time of her injury, there was no handrail on Woodland Avenue, and the same conditions as to snow and ice necessarily prevailed, on Woodland Avenue on the day on which plaintiff was injured, as existed on Oak Street. Moreover, the sidewalk on Oak Street furnished the more convenient way to plaintiff's destination. Plaintiff's husband on direct examination testified that Woodland Avenue was "* * no avenue at allvery steep and cobblestone and a covering of asphalt over that. The next street out there had a board sidewalk and you had to went considerable beyond to go to that, and you couldn't go down it hardly, much worse than Oak street, because one part of it was higher." The third way leading from Poplar Street to the Sands store, concerning which Burcham testified, was a sidewalk on Beech Street, which had a sidewalk like the one on Oak Street, except, according to plaintiff, it was "worse"; and in such condition that a pedestrian was required to get off the sidewalk at certain places in order to traverse the street. However, this record discloses that plaintiff was not injured by snow and ice on the platform on which she fell, or by the defective condition of the sidewalk and steps generally, which was apparent, but plaintiff's fall was caused by a latent condition in the sidewalk. The jury having been fully instructed by the court on the question whether plaintiff assumed the risk in entering upon the sidewalk on Oak Street or was guilty of contributory negligence, and the jury having found in plaintiff's favor on that question, we are not at liberty to disturb the verdict on the ground that the evidence bearing on the assumption of risk or contributory negligence is insufficient.
That the plaintiff knew that the sidewalk was defective, and perhaps dangerous, if not traveled in a careful way, cannot be controverted from this record; but that plaintiff did not know of the latent defect in the wooden platform which was the proximate cause of her fall and injury seems equally well established by this record. At least the question, in our opinion, was one for jury determination. In point 4 of the syllabus of Boyland v. City of Parkersburg, supra [78 W.Va. 749, 90 S.E. 348], this Court held: "A traveler along a public [sidewalk] having two reasonably convenient ways for his journey, one by continuing on the sidewalk which is known to him to be dangerous, and the other by leaving the sidewalk and traveling along the street known to him to be safe, assumes the risk if he takes the dangerous way, and he cannot recover for any injury he may thereby sustain; but, in the absence of knowledge as to the condition of the sidewalk along which he was traveling, he will not be denied compensation for this reason alone, when he pursues his way along the sidewalk, although it may be dangerous. The question of whether or not he knew it was dangerous, *513 or by the use of proper care could have known it, is for the jury." See in particular Pt. 4, Syl., Williams v. Main Island Creek Coal Co., 83 W.Va. 464, 98 S.E. 511.
In view of the earnestness with which defendant's counsel urge the reversal of the judgment complained of on the ground set forth under assignment of error No. 5, it is advisable that we consider in detail the action of the trial court in the giving of plaintiff's instructions Nos. 1, 2 and 2-A.
Plaintiff's instruction No. 1 reads:

"Plaintiff's Instruction No. 1
"The Court instructs the jury that any person who sustains any injury to his person as a proximate result of any sidewalk in an incorporated town being out of repair may recover against such town all damages sustained by him as a proximate result of such injury; and the Court further instructs the jury that a wooden sidewalk is out of repair when, by reason of defects in, or the rotting and weakening of, the stringers or other supporting structural members of the sidewalk or by reason of the absence of necessary supports under the said sidewalk, it is thereby rendered unsafe for reasonable use, by day or by night, by pedestrians exercising reasonable care in the use of such sidewalk.
"And the Court further instructs the jury that if you believe from the evidence that on the occasion in question the plaintiff, Mary E. Burcham, sustained personal injuries as a direct result of a fall upon a public sidewalk situated on Oak Street in the City of Mullens and if you further believe from the evidence that she so fell upon said sidewalk as a proximate result of said sidewalk being out of repair within the meaning of that term as previously defined, then you may make a verdict for the plaintiff, Mary E. Burcham, and against the defendant City of Mullens for such damages as you believe from the evidence said plaintiff has sustained, not, however, exceeding the sum of $15,000, unless you further believe from the evidence that said plaintiff was herself guilty of some negligent act or omission of duty which proximately contributed to her injuries."
Defendant's counsel assert that the trial court committed prejudicial error in giving this instruction, because the instruction: (1) incorrectly defines a wooden sidewalk as being out of repair within the meaning of Code, 17-10-17; and (2) the definition of a sidewalk out of repair, contained in the instruction, had the effect of drawing the jury's attention to other portions of the sidewalk where plaintiff does not claim to have fallen, but where there is some evidence in the record of other defects. Defendant's objection to plaintiff's instruction No. 1 is without substantial merit. The instruction told the jury that "a wooden sidewalk is out of repair, when, by reason of defects in, or the rotting and weakening of, the stringers or other supporting structural members of the sidewalk or by reason of the absence of necessary supports under the said sidewalk, it is thereby rendered unsafe for reasonable use, by day or by night, by pedestrians exercising reasonable care in the use of such sidewalk." This instruction sufficiently defines a sidewalk as being out of repair within the standards set forth in the fourth point of the syllabus in Yeager v. City of Bluefield, 40 W.Va. 484, 21 S.E. 752; and, as the record clearly establishes that plaintiff fell on the platform which is supported by a stringer, in which plaintiff's husband found a soft spot, and contains no evidence tending to show that plaintiff fell at any other place on the sidewalk, the instruction did not, as defendant's counsel assert, have the effect of drawing the jury's attention to other portions of the same sidewalk, where plaintiff does not claim to have fallen. This instruction, in our opinion, is not, as defendant's counsel assert, grossly misleading and prejudicial. The trial court did not err in giving it.
Plaintiff's instruction No. 2 reads:

*514 "The Court further instructs the jury that even though you believe from the evidence that the officers, agents and servants of the defendant municipality had no knowledge or notice that the sidewalk was out of repair at the time the plaintiff was injured, nevertheless such lack of knowledge or notice is not available to the defendant municipality as a defense in this suit. Regardless of such notice or lack of notice, if you believe from the evidence that the plaintiff fell and sustained injuries on the sidewalk in question as a proximate result of the sidewalk being out of repair, then you may make a verdict for the plaintiff for such damages as you believe from the evidence she has sustained, but not exceeding the sum of $15,000.00, unless you further believe from the evidence that the plaintiff was guilty of negligence on her own part which proximately contributed to her injuries."
Counsel for defendant assert that it was error for the trial court to give this instruction, because the instruction instructs the jury that lack of notice to the defendant that the sidewalk was out of repair at the time plaintiff was injured was not available as a defense; whereas no one asserted, or attempted to assert such lack of notice as a defense. This instruction correctly states the law applicable to a case such as this, that a municipal corporation has an absolute liability for injuries resulting from its streets, sidewalks and alleys being out of repair, and it was proper for the trial court so to instruct the jury.
Plaintiff's instruction No. 2-A reads:
"The Court further instructs the jury that evidence upon the question if when the plaintiff or her attorneys notified the defendant City of her claim which is presented in this case is not in issue and has no bearing whatever upon your determination of the real issues in this case which are defined in other instructions given to you in this case."
Defendant asserts that the giving of this instruction had the effect of telling the jury that they could not consider the evidence that plaintiff's attorneys or plaintiff failed to notify the city until after the old steps had been removed, and when no inspection could be made; and on this basis it is asserted that such evidence bears on the issue of the credibility of plaintiff's husband, upon whose testimony alone the alleged defective stringer under the platform upon which plaintiff fell is shown. In view of the fact that notice to the defendant is not a condition precedent to the institution of this action, it is immaterial whether plaintiff gave notice to the city that she had been injured by falling on the sidewalk, and, if such notice had been given, the time thereof is likewise immaterial.
From a careful and detailed consideration of defendant's instructions Nos. 6, 6A, 8, 11, 14 and 16, the Court is convinced that the trial court did not commit prejudicial error, as asserted in defendant's assignment of error No. 6, in refusing to give these instructions.
Defendant's instruction No. 6 simply told the jury that in determining whether the sidewalk in question was in a reasonably safe condition for ordinary travel by persons exercising ordinary care for their own safety, the jury should consider that the sidewalk was a board sidewalk, subject to the ordinary appearance and manner of construction of a board sidewalk with descending steps necessarily constructed in part on a steep hillside. The evidence in this case bearing on the location and condition of the sidewalk in question placed sufficient emphasis upon the fact that the sidewalk had descending steps necessarily constructed in part on a steep hillside; and the trial court's refusal to give this instruction did not prejudice defendant in any way.
Defendant asserts that its instruction No. 6A was designed to mark out the areas in which the jury could and should consider whether the sidewalk was "out of repair", and to eliminate irrelevant matter from their consideration. This instruction, *515 as well as defendant's instruction No. 8, refused, are, in our opinion, fully covered by defendant's instruction No. 3, which was given. It is not error in this jurisdiction to refuse to give an instruction which is amply covered by another instruction, which the court gave. 10 M.J., Instructions, Section 41 and cases cited.
Defendant's instruction No. 11 simply told the jury that they could not find for the defendant unless they found that the "defect" in the sidewalk proximately caused plaintiff's injuries. This instruction, dealing as it does with proximate cause, is covered by plaintiff's instructions Nos. 1 and 2 and defendant's instruction No. 3, which were given.
Counsel for defendant cite Boyland v. City of Parkersburg, supra; Shriver v. County Court of Marion County, supra; Hesser v. Town of Grafton, supra; and Slaughter v. City of Huntington, supra, in support of defendant's position that the trial court committed prejudicial error in refusing to give defendant's instruction No. 14. This instruction set forth the doctrine of contributory negligence. The jury was fully informed as to the applicability of the doctrine of contributory negligence as a possible bar to recovery in this action in plaintiff's instructions Nos. 1 and 2, which instructions gave the jury the hypothesis upon which plaintiff may recover, unless, as stated in plaintiff's instruction No. 1, "you further believe from the evidence that said plaintiff was herself guilty of some negligent act or omission of duty which proximately contributed to her injuries." Likewise for the reasons stated in the preceding paragraph as to defendant's instruction No. 11, the trial court did not err in refusing to give defendant's instruction No. 14.
Defendant assigns error to the refusal of the trial court to give its instruction No. 16, which reads:
"The Court instructs the jury that evidence concerning the defective condition of any portion of the Oak Street steps below the platform where plaintiff says she fell, or concerning the defective condition, if any, of the Beech Street steps, or concerning the kind of paving on, or condition of, Woodland Avenue, is not in issue in this case and such evidence has no bearing upon the determination of whether or not plaintiff's injuries were proximately caused by her fall on the platform in question but may only be considered by you in connection with determining whether or not plaintiff was guilty of contributory negligence in entering upon and walking upon the Oak Street sidewalk on the day of her said fall."
As the defect in the wooden platform upon which plaintiff fell was latent, the conflict in the evidence as to the condition of the surface of the platform having been resolved in plaintiff's favor under the theory of the case of Fielder, Adm'x v. Service Cab Co., 122 W.Va. 522, 11 S.E.2d 115, and kindred cases, the trial court did not err in refusing to give this instruction.
The trial court did not, in our opinion, as suggested in defendant's assignment of error No. 7, commit prejudicial error in disqualifying and dismissing the veniremen, L. F. Gary and Jack Goode, on the basis of questions and answers on the voir dire. As this case was tried by a jury, consisting of twelve jurors, who were legally qualified, the trial court's exclusion of the veniremen Gary and Goode, even if they were qualified, does not constitute reversible error. This position is based upon the postulate that this Court will not on writ of error or appeal reverse the judgment or decree of a trial court for error which is merely harmless. In point 2 of the syllabus of the recent case of Ritz v. Kingdon, W.Va., 79 S.E.2d 123, 125, this Court held: "The exclusion of a juror for insufficient cause is not reversible error if the twelve jurors who are finally chosen to try the case are legally qualified." For like holdings see Pardee v. Johnston, 70 W.Va. 347, pt. 1 syl., 74 S.E. 721; and Thompson v. Douglass, 35 W.Va. 337, pt. 1 syl., 13 S.E. 1015. The examination of the veniremen Gary and Goode and the *516 other veniremen in the presence of each other on the voir dire was usual and temperate, and such as would not create prejudice in the minds of the veniremen, who later became members of the jury. The foregoing also disposes of defendant's assignment of error No. 4.
The trial court, in our opinion, did not err in refusing to admit in evidence the letter of H. W. Dushkoff, the attorney originally employed by plaintiff to prosecute the instant claim, to City Attorney Ray Toler, dated June 11, 1951, wherein plaintiff's then counsel made claim for damages and described the then believed cause of plaintiff's fall. This letter was tendered for introduction in evidence, according to counsel for defendant, for the purposes of: First, the date of the letter, June 11, 1951, designates the time when the members of the Council of the City of Mullens, who were charged with the responsibility of keeping the sidewalk in repair, were first notified with respect of plaintiff's claim; and, second, the letter, in that it based plaintiff's claim for permanent injuries as "resulting from a fall on a hillside steps * * *, which steps were built and maintained by the City of Mullens, * * * without handrail and were so negligently maintained as to cause her [plaintiff] to fall and break her right wrist." Code, 17-10-17, the statute upon which this action is based, imposes upon every county court or incorporated city, town or village, liability, without regard to negligence, the absolute duty to maintain, in the case of the county court any road or bridge under its control, and, in the case of an incorporated city, town or village, any street, sidewalk or alley thereof, so that it is not "out of repair". 17 M. J., Streets and Highways, Sections 115 and 117; Whittington v. Jefferson County Court, 79 W.Va. 1, 90 S.E. 821; Shriver v. County Court of Marion County, supra; Blankenship v. City of Williamson, 101 W. Va. 199, 132 S.E. 492; and other cases cited under note 4, 17 M.J., Streets and Highways, Section 117. Thus it has been held that the duty of a municipal corporation to keep its streets, sidewalks and alleys so that they do not become "out of repair", within the meaning of Code, 17-10-17, is such that a street, sidewalk or alley is deemed out of repair so as to sustain liability for personal injuries, when a municipal corporation permits the streets, sidewalks, or alleys to become unsafe for ordinary and lawful use of the same by day or night. Carder v. City of Clarksburg, 100 W.Va. 605, 131 S.E. 349; Whittington v. Jefferson County Court, supra. It is immaterial whether the City or the Council of the City of Mullens had notice as to plaintiff's injuries, or when she for the first time made her claim for the liability asserted in this action; and as the City of Mullens under the statute is under the obligation to keep its streets, sidewalks and alleys in reasonably safe condition for travel in the ordinary modes of travel, with ordinary care, by day or night, the letter was not admissible for the purpose of effectuating a release of the instant claim. The rule prevailing in this jurisdiction, governing the necessity for notice to a municipality is aptly stated in 17 M. J., Streets and Highways, Section 123: "If the defect causing the injury has existed for such length of time that proper diligence would have discovered it, then no notice need be proven, but if the defect arise otherwise than from faulty structure or the direct act of the municipal authorities or their agents and be a recent defect, it is generally necessary to show that the authorities had knowledge thereof a sufficient time before the injury to have by reasonable diligence repaired it, or that they were negligently ignorant of it"; and, as this record discloses that the sidewalk on which plaintiff fell had been in a bad state of repair for a long period of time, that of itself would have dispensed with any notice on the part of any one injured by reason of the sidewalk being out of repair within the meaning of Code, 17-10-17, and the defendant municipal corporation was put on notice that a minute and detailed examination of the sidewalk was required, which examination would have readily disclosed to the examining authority the latent defect in the stringer under the platform on which plaintiff fell. In fact, plaintiff's husband in a rather *517 cursory examination of the sidewalk discovered the soft spot in the stringer. See Burke v. County Court of Jackson County, 70 W.Va. 174, pt. 1 syl., 73 S.E. 304.
We perceive no error, as asserted in defendant's assignment of error No. 9, in permitting the introduction of the map "Plaintiff's Exhibit A", which showed the removal of the location of the platform from its position at the former trial of this action. True, on the first trial plaintiff's witnesses may have agreed with defendant's witnesses, which, however, does not clearly appear from the record before us, that the board platform upon which plaintiff says she fell was substantially in the same location as the corresponding new platform; and on "Plaintiff's Exhibit A", the agreed location as established in the first trial was marked "platform A", and "there then appeared a new designation of a platform higher up the hill on `Oak' designated `platform B'". On the basis of this showing, plaintiff's witnesses, defendant's counsel contend, then testified contrary to their former testimony that "platform B" was the location of the platform upon which plaintiff said she fell. This, however, was a matter which could and should, if counsel had deemed it proper, been developed by the examination and cross-examination of witnesses. Moreover, before "Plaintiff's Exhibit A" was introduced, plaintiff's witness, J. R. James, a civil engineer, by whose testimony "Exhibit A" was put in evidence, was asked in detail by plaintiff's counsel: "There is also shown an area in dotted, broken lines, designated platform B and then a series of steps coming down the street. That, I believe, was directed to be placed in there by me?", to which witness answered, "It was"; and in answer to further inquiry the witness stated that those markings had no reference to what the witness found on the ground in May, 1952, at the time witness made the survey upon which "Plaintiff's Exhibit A", dated May 21, 1952, was prepared.
Defendant's assignment of error No. 10 that the admission of general statements as to the "general condition of the whole sidewalk" without differentiation of the platform on which plaintiff claims she fell, is too general to receive consideration on this writ of error, other than that heretofore given to the question raised by this assignment of error in the discussion of Plaintiff's instruction No. 1.
That this record discloses plaintiff has suffered severe injuries as the result of her fall cannot be gainsaid. However, as the excessiveness of the verdict in the amount of one thousand dollars is not assigned as error on this writ of error, only slight reference will be made to the evidence bearing on plaintiff's alleged injuries.
The testimony of Dr. Ward Wylie, a physician and surgeon practicing at Mullens, Wyoming County, a witness called on behalf of the plaintiff, read in connection with plaintiff's testimony, bears pertinently on the alleged causal connection between plaintiff's fall on the board platform on November 21, 1950, and the injuries which plaintiff claims she has suffered as the result of the fall. Dr. Wylie testified that his records disclose that on November 21, 1950, the day on which plaintiff was allegedly injured, plaintiff was admitted to the Mullens General Hospital at Mullens, and there was examined and treated by the witness; that plaintiff gave witness a history of having fallen down a flight of steps and receiving the injuries for which she was treated; that plaintiff suffered lacerations over and under her left eye, a severe sprain of both wrists, and multiple bruises over her body and extremities; and that witness sutured her lacerations and dressed her wounds, and plaintiff's wrists were splintered with bandage and tape, and then she was permitted to go to her home. This witness further testified that thereafter plaintiff came to him for examination and treatment "pretty frequently"; that plaintiff's right wrist not having responded as well to treatment as the left wrist, the right wrist was placed in a cast by a Dr. Miller about five weeks after the first examination. Thereafter for several months, Dr. Wylie further testified, plaintiff returned to him for diathermy *518 treatments of her right wrist, on which occasions the splint on plaintiff's wrist was removed for the purpose of giving plaintiff the treatments, and then the plaster splint was reapplied to her wrist, the last reapplication being on February 17, 1951. This witness' testimony establishes for jury determination that from an examination made by the witness two or three weeks before the trial, he observed no change in plaintiff's condition; and that the motion of the wrist is still painful and there is muscular atrophy; that plaintiff's right wrist is weaker than the left, so that plaintiff complained of not being able to pick up objects, which is due to a muscular weakness; and further this witness testified that because of the time which has elapsed since the injury, that is about twenty months, plaintiff's injury is, in the opinion of the witness, permanent; and that the scars under and over plaintiff's left eyebrow likewise are of a permanent nature.
Dr. E. G. Shannon, a qualified physician and surgeon practicing in the Town of Oceana, Wyoming County, who examined the plaintiff and testified concerning her injuries, stated that as his examination of plaintiff occurred several years after the alleged injury, he was unable to say what was the exact cause of the atrophy of plaintiff's right wrist, which his examination disclosed, and he testified that there "could or could not be a direct connection" between plaintiff's alleged injury and the ganglion cyst, which he discovered on the dorsum of plaintiff's left wrist, and a diminished grip in plaintiff's right wrist, as distinguished from that of the left wrist. This witness also testified that assuming that the right normal range of the bending motion of the right elbow is represented by one hundred per cent, the bending motion of plaintiff's elbow was "possibly at eighty per cent of the full extent."
From the foregoing it appears that the testimony of Dr. Wylie and Dr. Shannon presents a direct conflict in the evidence, bearing on the question of the causal connection between plaintiff's fall and the nature and extent of plaintiff's injuries, which conflict must be resolved in plaintiff's favor by this Court, in view of the verdict of the jury under the holdings of this Court in State ex rel. Bumgarner v. Sims, Auditor, W.Va., 79 S.E.2d 277; Spence v. Browning Motor Freight Lines, W.Va., 77 S.E.2d 806, 809; Frampton v. Consolidated Bus Lines, 134 W.Va. 815, 823, 62 S.E.2d 126; Laphew v. Consolidated Bus Lines, 133 W.Va. 291, 294, 55 S.E.2d 881; Billy v. Powell, 133 W.Va. 278, 282, 55 S.E.2d 889; Boyce v. Black, 123 W.Va. 234, pt. 1 syl., 15 S.E.2d 588; and Fielder, Adm'x v. Service Cab Co., 122 W.Va. 522, 11 S.E.2d 115.
For the foregoing reasons the judgment of the Circuit Court of Wyoming County is affirmed.
Affirmed.
HAYMOND, Judge (dissenting).
I can not agree to the decision of the majority, which affirms the judgment of the circuit court in favor of the plaintiff, and I respectfully register this dissent.
The burden was upon the plaintiff to show, by adequate and competent proof, that the section of the sidewalk where she fell and sustained the injuries of which she complains was out of repair and that its unsafe condition at that place was the proximate cause of her injuries. The evidence introduced in her behalf does not satisfy that essential requirement.
No witness who testified saw the plaintiff fall and no one except the plaintiff knows the exact location at which she fell, or how her fall occurred, or what caused her to fall. She testified that she fell on the platform section of the sidewalk, which extended along and parallel with the side of the hill, and was located between and at right angles to the upper section and the lower section of the sidewalk which were composed of flights of steps and extended up and down the hill; and that she descended the upper flight of steps, came to the platform, and then "started out on the platform and got a little past midways, and then all at once it gave way, and I fell. I started to fall downhill and *519 then I caught myself, and I fell this way." The direction in which she "fell this way" is not clear from her quoted statement but later in her testimony she stated she fell toward the uphill side of the platform which, in direction, was opposite to that in which she "started to fall" and "caught" herself before she fell.
In her examination in chief the plaintiff was asked these questions and gave these answers: "Q Will you tell the jury, Mrs. Burcham, about what position that platform was, examining Plaintiff's Exhibit A, at the time of your injury? A It was not good. It looked like it was in good order, the platform, and I didn't step on the end of the plank, that one board there, it give way. Q Which side gave way, Mrs. Burcham? A The right sidethe left. Q The right side? A You saidyes; the right side. * * *. Q You walked out to about halfway, and then the platform tilted on you, didn't it? A I don't know what happened. My feetI just fell, and I started to fall downhill, and then I caught myself, and I struck my head on the rock and broke my glasses, too, when I fell. Q Did it knock you unconsciousA When I came to I commenced hollering for help, and this girl run out and helped me up. * * *. Q What position were you in when you came tocould you recognize where you were? A I had blood all over me, all over my face and clothes. I don't know what happened to me. * * *. Q Were you on the platform when you came to? A I had got up and sat back down. I was laying on the platform, part of me."
The husband of the plaintiff, who apparently was at home when she was injured, examined the section of the platform on which his wife fell after she had returned to their home. The time at which he examined the platform is not clearly shown but it was at least more than thirty minutes after the plaintiff had fallen. He found the rock mentioned by the plaintiff and located it about two feet above or north of the platform which shows that the plaintiff fell toward or up the hill although she testified that the right or down the hill side of the platform "gave way." He testified that he went upon the platform and jumped "up and down" on it, and that the lower side then "gave" two or three inches "where my weight was." He found that the stringer which supported the lower side of the platform was "soft, rotten, full of moisture." He put a rock under the stringer which helped the platform "considerably." On cross examination he was asked these questions and gave these answers: "Q When you stepped on the platform, when your right foot went down, it gave way to the right and you examined at that place? A Yes, sir. Q And that was the worst part you found in the stringers? A Yes, sir." As to the cross planks or boards which formed the floor of the platform which appears to have been about three feet in width he was asked these questions and gave these answers: "Q And you cannot tell whether they gave down in the soft wood or not? A I don't know that they imbeded in the wood, but they were all kind of down on the top because of this decayed part along here. Q Were the ones all right next to bank? A They were seemingly. Q Were the one holding on that side? A As far as I could tell. Q That was, the stringer was down on the ground? A As far as I know they were all in. The boards weren't tight on the whole thing. Q The ones were all right on the right hand side down on the hill? A They were most all holding. There was cracks and decay between the boards."
Several witnesses produced by the plaintiff who were familiar with the location and the condition of the sidewalk, including the platform, at and prior to the time the plaintiff fell in November, 1950, and who used the sidewalk frequently, testified that the sections of the sidewalk which consisted of flights of steps above and below the platform were in bad condition; that some of the boards forming the steps were broken or missing; and that the supporting stringers "sagged"; but none of these witnesses testified that any such condition existed in the platform or that the platform ever sank, or gave way, or tilted with any of them.
*520 In April, 1951, about six months after the plaintiff fell, the entire sidewalk, including the platform, was replaced. The two contractors who dismantled the platform on which the plaintiff fell, as witnesses produced in behalf of the defendant, testified that though the condition of the steps was "bad" the platform was in "fairly" good condition; that the stringer, about which the husband of the plaintiff testified, was intact, and not broken; and that they did not observe that any part of it was in a rotten or decayed condition. There is no showing that there was any change in the condition of the material in the construction of the platform between November 1950, when the plaintiff was injured, and April 1951, when the platform was removed and replaced with a new platform near the old location. A mail carrier, who used the platform a few minutes before the plaintiff fell in the afternoon of November 27, 1950, and who used it on each day that he carried mail between that date and April 1951 when the platform was removed, found nothing unusual in its condition, and, during that period, when he travelled over the platform, it did not sway or tilt or sag.
The evidence shows that the sections of the sidewalk consisting of flights of stairs above and below the platform were out of repair but that condition of those sections did not cause the plaintiff to fall and they have no connection with her injuries. The evidence, however, fails to show that the platform, at any point, was out of repair within the meaning of Section 17, Article 10, Chapter 40, Acts of the Legislature, 1933, Extraordinary Session (Section 17, Article 10, Chapter 17, Michie's Annotated Code, 1949), which imposes liability upon a county court for injuries sustained by any person by reason of any road or bridge under the control of the county court "being out of repair" and upon a municipal corporation for injuries sustained by any person by reason of any street, sidewalk or alley which the municipal corporation is required by its charter to keep in repair "being out of repair."
As already pointed out the platform upon which the plaintiff fell was not broken and the floor of the platform was not uneven. The stringer, which the plaintiff's husband testified was soft or rotten in one place, was firm and intact both before and after the plaintiff fell and there was no obstruction upon the platform which could reasonably be expected to cause the plaintiff to fall. As far as the evidence discloses the platform was firm and strong before and after the plaintiff fell. There is no testimony by any of the numerous persons who used it, including the plaintiff and her husband, that the platform ever sank, sagged or tilted except when the plaintiff fell and later the same day when the plaintiff's husband jumped "up and down" on it to make it sag or go down a few inches below its customary level or elevation. That the platform tilted or sagged to the extent of a few inches, when the plaintiff fell, and later when her husband jumped "up and down" on it, does not render it out of repair within the meaning of the statute.
This Court has said repeatedly that a public street or a public sidewalk to be out of repair must be in a condition which renders it dangerous to persons using it with ordinary care and in the usual modes by day or by night. Rich v. Rosenshine, 131 W. Va. 30, 45 S.E.2d 499; Taylor v. City of Huntington, 126 W.Va. 732, 30 S.E.2d 14; Thompson v. City of Charleston, 118 W.Va. 391, 191 S.E. 547; Roth v. City of Moundsville, 118 W.Va. 283, 190 S.E. 332; Patton v. City of Grafton, 116 W.Va. 311, 180 S.E. 267; Williams v. Main Island Creek Coal Company, 83 W.Va. 464, 98 S.E. 511; Johnson v. City of Huntington, 82 W.Va. 458, 95 S.E. 1044; Whittington, Adm'r. v. County Court of Jefferson County, 79 W.Va. 1, 90 S.E. 821; Boyland v. City of Parkersburg, 78 W.Va. 749, 90 S. E. 347; Stanton v. City of Parkersburg, 66 W.Va. 393, 66 S.E. 514; Parrish v. City of Huntington, 57 W.Va. 286, 50 S.E. 416; Arthur v. City of Charleston, 51 W.Va. 132, 41 S.E. 171; Waggener v. Town of Point Pleasant, 42 W.Va. 798, 26 S.E. 352; Yeager v. City of Bluefield, 40 W.Va. 484, 21 S.E. 752; Wilson v. City of Wheeling, 19 W.Va. 323, 42 Am.Rep. 780. This Court has also held that an alleged defect *521 consisting of a slightly raised portion of a public sidewalk of a city upon which a thin covering of ice and snow occurred and which was made slippery by children coasting upon it does not render the sidewalk out of repair within the meaning of the statute, Holsberry v. City of Elkins, 86 W. Va. 487, 103 S.E. 271; and that every defect in a city street or sidewalk, though it may cause an injury, is not actionable under the statute. Waggener v. Town of Point Pleasant, 42 W.Va. 798, 26 S.E. 352; Yeager v. City of Bluefield, 40 W.Va. 484, 21 S.E. 752.
The evidence does not show that the condition of the platform was the proximate cause of the injuries sustained by the plaintiff as a result of her fall. The only person who found a defect in any part of the platform was the plaintiff's husband. The plaintiff found none. The defect which he says he found and which no other person discovered, consisting of a soft or rotten space a few inches in length on one stringer, did not cause him to fall when he was examining and testing the platform; and that condition did not cause and could not have caused the plaintiff to fall. Though she testified that the tilting or the sagging of the platform on its right or down hill side caused her to fall in the opposite direction and toward the uphill side of the platform, a statement which is of doubtful credibility, her own testimony that she did not know "what happened" to her and that she "just fell" indicates clearly that an attack of dizziness, to which she was subject because of hypertension from which she suffered, or the manner in which she walked on the platform, and not its condition, caused her fall. To conclude from the testimony given by her and her husband that the condition of the platform, which had never sunk, sagged or tilted before, was the proximate cause of her fall, is sheer conjecture and speculation. "A jury will not be permitted to base its findings of fact upon conjecture or speculation." Point 1, syllabus, Oates v. Continental Insurance Company, 137 W.Va. 501, 72 S.E.2d 886; Ritz v. Kingdon, W.Va., 79 S.E.2d 123.
It can not be said, with any degree of reason, that a platform, composing a section of a sidewalk, which was unobstructed, even, intact, firm and solid at all times before the plaintiff, in walking upon it, fell when it sank or tilted a few inches and, a half hour or more later on the same day, again sank or tilted when her husband caused it to do so by jumping "up and down" on it, and did not subsequently sink or tilt when used by other persons walking on it, was, when the plaintiff fell, in a condition which rendered it dangerous to persons using it with ordinary care and in the usual modes by day or by night, or that the platform, as a part of the sidewalk, was out of repair within the meaning of the statute.
As the verdict is not supported by evidence which showed the platform to be out of repair at the time she fell or that she fell as a result of any such condition of the platform, the verdict should have been set aside by the trial court. "Where in a trial of an action at law before a jury, the verdict returned is without evidence to support it, or is plainly wrong, it will be set aside by this Court, the judgment entered thereon reversed, and the case remanded for a new trial." Syllabus, DeLuz v. Board, 135 W. Va. 806, 65 S.E.2d 201; Point 1, syllabus, Wickline v. Monongahela Power Company, W.Va., 81 S.E.2d 326. The verdict is also against the decided weight and preponderance of the evidence and for that reason should have been set aside by the trial court. Kap-Tex, Inc. v. Romans, 136 W.Va. 489, 67 S.E.2d 847; Wickline v. Monongahela Power Company, W.Va., 81 S.E.2d 326; Stenger v. Hope Natural Gas Company, W.Va., 80 S.E.2d 889; Ritz v. Kingdon, W.Va., 79 S.E.2d 123; Sammons Brothers Construction Company v. Elk Creek Coal Company, 135 W.Va. 656, 65 S.E.2d 94; Burgess v. Gilchrist, 123 W.Va. 727, 17 S.E.2d 804, 138 A.L.R. 676; Huntington Development and Gas Company v. Topping, 115 W.Va. 364, 176 S.E. 424; Armour Fertilizer Works v. Finnell, 112 W.Va. 325, 164 S.E. 253; Cannady v. Chestonia, 106 W.Va. 254, 145 S.E. 390; McKown v. Citizens' State Bank of Ripley, 91 W.Va. 716, 114 S.E. 271; Dexter and *522 Carpenter, Inc. v. Co-operative Fuel Company, 90 W.Va. 465, 111 S.E. 153; Palmer v. Magers, 85 W.Va. 415, 102 S.E. 100; Kelley v. Aetna Insurance Company, 75 W.Va. 637, 84 S.E. 502; Fuccy v. Coal and Coke Railway Company, 75 W.Va. 134, 83 S.E. 301; Priddy v. Black Betsy Coal and Mining Company, 64 W.Va. 242, 61 S.E. 163; Coalmer v. Barrett, 61 W.Va. 237, 56 S.E. 385; Chapman v. Liverpool Salt and Coal Company, 57 W.Va. 395, 50 S.E. 601; James Clark Distilling Company v. Bauer, 56 W.Va. 249, 49 S.E. 160; Limer v. Traders Company, 44 W.Va. 175, 28 S.E. 730.
For the foregoing reasons I would reverse the judgment of the Circuit Court of Wyoming County, set aside the verdict of the jury, and award the defendant a new trial.
I am authorized to state that Judge BROWNING concurs in the views expressed in this dissent.