**FAMILY MEDICAL IMAGING, LLC; Gary L. Poling, D.O.; and Scott C. Lostetter, D.O., Plaintiffs Below, Appellants,**

v.

**WEST VIRGINIA HEALTH CARE AUTHORITY, Defendant Below, Appellee.**

**Raleigh General Hospital, Intervener.**

**No. 32565.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 2005.

Decided Nov. 17, 2005.

Dissenting Opinion of Justice Starcher Dec. 15, 2005.

---

Darl W. Poling, Beckley, West Virginia, Attorney for the Appellants.

Marianne Kapinos, Cynthia H. Dellinger, Charleston, West Virginia, Attorney for Appellees.

Thomas G. Casto, Webster J. Arceneaux, III, Amanda M. Ream, Lewis, Glasser, Casey & Rollins, Charleston, West Virginia, Attorneys for the Intervenor.

James W. Thomas, Jackson Kelly, PLLC, Charleston, West Virginia, Attorney for Amicus Curiae West Virginia Hospital Association.

The Opinion of the Court was delivered PER CURIAM.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

PER CURIAM:

Family Medical Imaging, Dr. Gary L. Poling and Dr. Scott C. Lostetter (hereinafter referred to as the "Appellants"),[1] appeal from an order of the Circuit Court of Raleigh County that affirmed a decision of the West Virginia Health Care Authority (hereinafter referred to as "the Authority")[2] to deny the

---

1. Dr. Poling and Dr. Lostetter are the owners of Family Medical Imaging.

2. The Authority was formerly known as the Health Care Cost Review Authority. The legislature changed the name in 1997. *See* W. Va.Code § 16-29B-5 (2001) (Repl.Vol.2001).

Appellants a certificate of need.[3] In this appeal the Appellants contend that the denial of their request for a certificate of need was erroneous because the Authority (1) applied the wrong standard for issuing a certificate of need, (2) improperly found that the proposed service area was too large, and (3) erred in denying their motion to exclude expert testimony.[4] After listening to the arguments of the parties and carefully reviewing the record, we affirm the circuit court's order.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This case arose out of an attempt by the Appellants to obtain a certificate of need [5] so that they could provide ultrasound diagnostic services to patients referred to them by other physicians in the counties of Raleigh, Wyoming, McDowell, Fayette, Summers and Nicholas.[6] The Appellants filed an application for a certificate of need with the Authority on December 3, 2002. Shortly thereafter, the Authority permitted Raleigh General Hospital (hereinafter referred to as "the Hospital") to intervene as an affected party.[7] On March 31, 2003, the Authority issued a Time Frame Order allowing the parties to engage in discovery and requiring the parties to exchange witness lists that included a summary of the expected testimony of each witness.

On April 14, 2003, two days before the evidentiary hearing in the case, the Appellants filed a motion seeking to exclude the testimony of two of the Hospital's experts, Raymona Kinneberg and Lawrence A. Pack. The Appellants alleged that the Hospital failed to adequately disclose the substance of the experts' testimony. Immediately prior to

the evidentiary hearing on the merits of the application, the Authority denied the motion.

After receiving the evidence, the Authority issued an order on October 9, 2003, denying the Appellants application. Appellants thereafter filed a request for review of the decision before an administrative law judge (hereinafter referred to as "the ALJ"). The Appellants alleged that the Authority's decision should be reversed because it was based upon the wrong standard for issuing a certificate of need, improperly found that the proposed service area was too large, and because the Authority erred in denying their motion to exclude expert testimony. The Hospital subsequently filed a motion to dismiss the request for review as untimely filed. The ALJ convened a hearing on January 12, 2004, to hear arguments on the motion to dismiss, as well as the merits of the request for review. On February 20, 2004, the ALJ issued an order granting the Hospital's motion to dismiss without making a ruling on the merits of the request for review.

The Appellants then appealed the ALJ's decision to the circuit court. The circuit court, by order entered April 14, 2004, reversed the ALJ's decision and remanded the case for a determination on the merits of the request for review. The ALJ issued a subsequent order dated May 26, 2004, affirming the Authority's decision. The Appellants thereafter filed an appeal with the circuit court. The circuit court, by order entered September 1, 2004, affirmed the ALJ's decision. From this ruling, Appellants now appeal to this Court.

## II.

## STANDARD OF REVIEW

■ This appeal arises from the circuit court's ruling on an administrative order. In

---

3. The Authority filed a brief in this matter.

4. The West Virginia Hospital Association filed an amicus curiae brief in support of the Authority's decision to deny the certificate of need.

5. A certificate of need refers to "a document issued by [the Authority] which indicates that a proposed new institutional health service is in compliance with the intent, purposes and provi-

sions of W. Va.Code § 16–2D–1 *et seq.*, and that a need exists for the proposed new institutional health service." CSR 65–7–2.2.6.

6. The Appellants are not required to have a certificate of need to utilize an ultrasound machine on their own patients.

7. This Court has also permitted the Hospital to intervene and file a brief.

conducting our review, we are bound to the same standard of review that controlled the circuit court's actions.[8] We have held that "[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va.Code § 29A–5–4[g] and reviews questions of law presented de novo; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). *See also Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) ("[I]n reviewing an ALJ's decision that was affirmed by the circuit court, this Court accords deference to the findings of fact made below. This Court reviews decisions of the circuit under the same standard as that by which the circuit reviews the decision of the ALJ. We must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. Further, the ALJ's credibility determinations are binding unless patently without basis in the record. Nonetheless, this Court must determine whether the ALJ's findings were reasoned, *i.e.*, whether he or she considered the relevant factors and explained the facts and policy concerns on which he or she relied, and whether those facts have some basis in the record. We review de novo the conclusions of law and application of law to the facts.")

## III.

## DISCUSSION

### A. Standard for Issuing a Certificate of Need

Appellants first complain that the Authority used the wrong standard in assessing their application for a certificate of need. The initial problem with this assignment of error is that the record does not contain the order issued by the Authority denying the application.[9] We have made clear that "[t]he responsibility and burden of designating the record is on the parties, and appellate review must be limited to those issues which appear in the record presented to this Court." Syl. pt. 6, *In re Michael Ray T.*, 206 W.Va. 434, 525 S.E.2d 315 (1999). Insofar as this issue was addressed squarely in the ALJ's order, we will proceed to examine the matter as it was addressed in that order.

The Appellants contend that the Authority "applied standards which were adopted for acute care facilities[.]" Under this standard, an applicant must demonstrate that "at least 25% of the residents rely on services in the county of proposal, or a county that generates 10% of the applicant's patient load." The Appellants argue that their application standards should have been considered under the governing ambulatory care centers.[10] Under the ambulatory care center protocol, there is no express numerical county-patient-load requirement.

8. The standard of review for a circuit court condidering an appeal under the Administrative Procedures Act is as follows:

 (g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
 (1) In violation of constitutional or statutory provisions; or
 (2) In excess of the statutory authority or jurisdiction of the agency; or
 (3) Made upon unlawful procedures; or
 (4) Affected by other error of law; or
 (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
 W. Va.Code § 29A–5–4(g) (1998). *Accord McDaniel v. West Virginia Div. of Labor*, 214 W.Va. 719, 723, 591 S.E.2d 277, 281 (2003); *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W.Va. 326, 334, 472 S.E.2d 411, 419 (1996).

9. We note also that the record did not contain the ALJ's order. However, this Court was able to obtain a copy of that order.

10. An ambulatory care center is defined as "a free-standing facility, staffed by one or more health care professionals, which provides services on an outpatient basis[.]" Certificate of Need Standards Schedule, http://www.hcawv.org/CertOfNeed/Support/Ambulatory_Care_Centers.pdf.

The Authority and the Hospital agree with the Appellants that the 25/10 acute care requirements are not applicable to an ambulatory care center. However, the Authority and the Hospital aver that the 25/10 acute care requirements were not imposed on the Appellants.

The ALJ's order does, in fact, mention the 25/10 acute care requirements. However, the ALJ's order merely referenced the 25/10 acute care requirements as an *example* of a standard used in determining population need for services. In doing so, the ALJ noted that the Hospital, which was subject to the 25/10 acute care requirements, did not serve an area as expansive as that which was proposed by the Appellants. Simply put, the ALJ's order did not apply the 25/10 acute care requirements. The order of the ALJ specifically set out the protocol for an ambulatory care center as follows:

## II. GENERAL STANDARDS

The following standards apply to all ambulatory care centers. Standards which apply specifically to a particular type of ambulatory care center are listed in Section III of this standard and supplement the general standards, unless otherwise noted.

### A. Need Methodology

For ambulatory care centers for which no specific need methodology is set forth in Section III, below, the following general need methodology shall be used. If a need methodology is specified for a particular type of ambulatory care facility in Section III of this standard, the general need methodology will apply only to those portions of the need methodology which are not specified.

All certificate of need applicants shall demonstrate, with specificity, that there is an unmet need for the proposed ambulatory care services, that the proposed services will not have a negative impact on the community by significantly limiting the availability and viability of other services or providers, and that the proposed services are the most cost effective alternative.

The applicant shall delineate the service area by documenting the expected areas around the ambulatory care facility from which the center is expected to draw patients. The applicant may submit testimony or documentation on the expected service area, based upon national data or statistics, or upon projections generally relied upon by professionals engaged in health planning or the development of health services.

The applicant shall document expected utilization for the services to be provided by the facility for the population within the service area. As used in this section, "expected utilization", in addition to the expected demand for the service, may be expressed as the number of providers typically required to serve any given population, or as the number of persons in a population that are typically served by a single provider. Where a population is known to have specific characteristics, such as age or disease rates, that affect utilization, then those characteristics may be taken into consideration.

After establishing expected utilization or demand, the applicant shall estimate or document the number of existing providers within the service area and the extent to which the demand is being met by existing providers located within the service area. Where expected utilization is expressed as a number of providers typically serving a given population, it shall be sufficient to show that the ratio of providers to the population in the area is below the expected number. Providers located outside the service area need not be considered, absent specific showing that a provider located outside the service area is a major provider of services to the population within the service area.[11]

The ALJ's order clearly utilized the ambulatory care center protocol in evaluating the Appellants' application. Thus, assuming for the sake of argument that the Authority did,

---

11. *See* Certificate of Need Standards Schedule, http://www.hcawv.org/CertOfNeed/Support/Ambulatory_Care_Centers.pdf.

in fact, impose the 25/10 acute care requirements on the Appellants, this error was rendered harmless by the ALJ's application of the appropriate standards for ambulatory care centers.

### B. The Proposed Service Area Was Too Large

Appellants next contend that the Authority was wrong in finding that their proposed service area of six counties was too large because they included two counties in which they had an insignificant number of pre-existing clients. The Appellants contend that under the standards for ambulatory care centers, there is no requirement that an applicant show that a specific number of clients are served in each county proposed. Consequently, the Appellants argue that they produced sufficient evidence to show the need for the proposed service in the six counties.

The circuit court correctly found, and all parties agree, that there is "no express definition contained in the Standards, or in any other regulation of what may constitute a proper service area for a new [diagnostic center]." [12] All that the ambulatory care center standards require is that "[a]n applicant must delineate, through testimony or documentation, the expected areas from which the diagnostic center will draw its patients." The circuit court addressed this matter as follows: "The Court observes that there can be no brightline rule to specifically describe an appropriate service area for a diagnostic center, but concedes that the [Authority] should be allowed some leeway to interpret and apply the State Health Plan." The Authority has interpreted the ambulatory care standards as requiring a showing of significant pre-existing clients in each county that is to be served.

The Authority's interpretation of the ambulatory care center standard as requiring an applicant to show a significant pre-existing client population in each proposed county is an "interpretive rule." This Court has held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995).

Justice Cleckley addressed the issue of interpretive rules in *Appalachian Power* as follows:

> Interpretive rules ... do not create rights but merely clarify an existing statute or regulation. Because they only clarify existing law, interpretive rules need not go through the legislative authorization process. Although they are entitled to some deference from the courts, interpretive rules do not have the force of law nor are they irrevocably binding on the agency or the court. They are entitled on judicial review only to the weight that their inherent persuasiveness commands.

*Appalachian Power,* 195 W.Va. at 583, 466 S.E.2d at 434 (internal citations omitted). In a concurring opinion by Justice Starcher in *Cookman Realty Group, Inc. v. Taylor,* 211 W.Va. 407, 566 S.E.2d 294 (2002) (per curiam), he addressed the issue of interpretive rules as follows:

> The agency's construction, while not controlling upon the courts, nevertheless constitutes a body of experience and informed judgment to which a reviewing court should properly resort for guidance. The weight that must be accorded an administrative judgment in a particular case will depend upon (1) the thoroughness evident in its consideration, (2) the validity of its reasoning, (3) its consistency with earlier and later pronouncements, and (4) all those factors which give it power to persuade, if lacking power to control.

*Cookman,* 211 W.Va. at 417–418, 566 S.E.2d at 304–305 (Starcher, J., concurring).

The Authority has provided the following reasons for interpreting the ambulatory care

---

12. The ultrasound services that the Appellants proposed to offer come under the definition of "diagnostic center." A diagnostic center is "a facility that offers routine diagnostic outpatient testing and procedures, including, but not limited to laboratory, radiography, *ultrasound,* testing for general physical examinations, drug screening, nuclear medicine, imaging, or other procedures that can be reasonably performed in an outpatient setting." Certificate of Need Standards Schedule, http://www.hcawv.org/CertOf-Need/Support/Ambulatory_Care_Centers.pdf (emphasis added).

center standards as requiring an applicant have significant pre-existing clients in each proposed county:

The Authority is entitled and, in fact, must critically evaluate [certificate of need] applications in order to determine if they merit approval. If the Court were to accept [Appellants'] argument, it would deprive the Authority of discretion to critically evaluate [certificate of need] applications and eviscerate the Authority's legislatively conferred powers. Essentially, adopting [Appellants'] argument would allow applicants to project need without restriction in all cases before the Authority where no specific service area is defined. The Authority could only rubber stamp such applications and not delve any deeper or perform any analysis. This was clearly not the intent of the Legislature when it empowered the Authority to administer the [certificate of need] program and it was likewise not the intent of the Authority to allow unmet need to be manipulated under the Ambulatory Care Standards, as [Appellants] did in this case.

It is essential that the Authority has discretion to critically evaluate applications or the entire mission of the Authority is in jeopardy. The Authority was created, in part, to help restrain the costs of health care. This is accomplished, in part, by not allowing the duplication of services in a service area. If the Authority were deprived of the ability to critically evaluate applications, it would become a rubber stamp approving anything that is filed. This would result in skyrocketing health care costs and would not benefit the health care consumers that the Authority is charged with protecting.

We find the reasons articulated by the Authority for its interpretive rule to be persuasive. Consequently, we must determine whether the Authority's interpretive rule was applied arbitrarily to the facts of this case.

 The Appellants assert that they provided evidence to show that they have pa-

tients that reside in all of the six proposed counties, in addition to documentation from other physicians that indicated they would refer patients to the Appellants.[13] The lower tribunals considered this evidence, but found it insufficient. The ALJ's order, which was affirmed by the circuit court, addressed the matter as follows:

Dr. Poling testified that he has three to five thousand patients of whom he sees 15 to 20 per day. The bulk of his clientele comes from Fayette and Raleigh counties. The doctor serves two families from McDowell County and "several" families from Nicholas County. No additional evidence was proffered by the applicant relating to the inclusion of these two counties in the service area.

In the Decision of October 9, 2003, the Authority noted that the entire population of McDowell and Nicholas counties was included for the purpose of determining unmet need although few of Dr. Poling's patients are from those particular counties. By including these two counties, the applicant added a population of more than 50,000 people, to the proposed service area.

The Raleigh County Circuit Court has previously addressed this issue and affirmed the Authority's position that if an entity is serving an insignificant number of people in a county, it is not reasonable to include that county in a need methodology.

. . . .

An applicant is not free to create a service area as expansive as necessary to satisfy the requirements of unmet need but must have a reasonable basis for considering counties as a part of the expected area to be served. To conclude otherwise would defy logic.[14]

In summary, the lower tribunals correctly concluded that the Appellants' application should be denied, because the Appellants included two counties in their proposed service area in which they had an insignificant number of pre-existing clients. The evidence

---

13. The amicus brief indicated that the Appellants produced six letters from physicians. "However, five (5) of those maintain practices in Beckley, and the sixth maintains a practice in Kanawha County, which is outside the proposed service area."

14. The record does not show that Dr. Lostetter provided specific testimony regarding the areas from which he draws his patients.

supports this conclusion. Therefore, we must affirm the lowers tribunals' determination that the Appellants failed to demonstrate a need for the proposed service.[15]

## IV.

## CONCLUSION

The circuit court's order is affirmed.

Affirmed.

STARCHER, J., dissenting:

(Filed Dec. 15, 2005)

I write separately to express my disagreement with the majority decision. The decision of the majority affirming the West Virginia Healthcare Authority's rejection of appellants' certificate of need application is sure to have a chilling effect on healthcare-related investment and innovation in West Virginia. This is an example of the powerful and wealthy wielding their influence over government regulation. Reading between the lines of technicalities and legalese, this case is simply about protecting the financial interest of Raleigh General Hospital—nothing more, nothing less.

Under the guise of "interpretive rules" the majority allows the Authority unfettered power to protect existing healthcare operations from competition without proof of harm to the existing providers. From my review of the record in this case, I find that no ambiguity exists in the applicable standards to be applied to appellants' application for a certificate of need. For this reason there is no need to engage in a discussion of interpretive–rule principles since the circumstances of this case fail to satisfy Syllabus Point 3 of *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

Furthermore, even if it is necessary to engage in an analysis of interpretive-rule principles, I am not persuaded that any deference should be given the Authority's interpretation. No doubt the majority cites to my concurrence in *Cookman Realty Group, Inc. v. Taylor*, 211 W.Va. 407, 566 S.E.2d 294 (2002) (*per curiam*), knowing of my expressed opposition to the majority decision. In *Cookman* I discussed four factors that, in appropriate cases, should be determinative of the weight that should be accorded an administrative judgment. If the majority intends to rely of the *Cookman* four-factor analysis, it fails to analyze this case on the basis of all of those factors. Furthermore, the majority decided this case *per curiam*, rather than writing a new syllabus point establishing as law the four-factor analysis quoted from my concurrence in *Cookman*.

By sanctioning the Authority's interpretation of the standard as requiring a "significant pre-existing client population," the majority has placed all would-be applicants in a "catch 22" position. In order to establish "significant pre-existing client population" an applicant would be required to be in operation, but on the other hand, they could not operate without the Authority's certificate of need. I find this repugnant to the purposes of the Authority.

Finally, from the record it is clear that the Authority indirectly applied quantitative cri-

---

15. The Appellants also contend that the Authority committed error in rejecting their data on the financial feasibility of the proposed service. This issue, however, was rendered moot when the Authority determined that the Appellants failed to demonstrate a need for the proposed service. *See* Syl. pt. 2, *Princeton Cmty. Hosp. v. State Health Planning*, 174 W.Va. 558, 328 S.E.2d 164 (1985) ("Under West Virginia Code § 16–2D–9(b) (Supp.1984), the legislature has provided that a certificate of need may only be issued upon a finding that the proposed health service is both needed and consistent with the State Health Plan. Neither the State Health Planning and Development Agency nor a reviewing tribunal is statutorily empowered to issue a certificate of need without clear findings and conclusions of compliance with both requirements. Accordingly, once it has been determined that denial of a

certificate of need application is clearly mandated by the absence of one of these requirements, a determination regarding the other is unnecessary."). Further, we need not consider the merits of the Appellants contention that the Authority committed error in not excluding the testimony Ms. Kinneberg and Mr. Pack. Both the ALJ and circuit court found that, to the extent that it was error not to exclude the testimony, it was harmless error because the testimony was not needed for making the determination that the Appellants failed to produce sufficient evidence of a need for the proposed service. We agree with the lower tribunals on this issue. *See Burcham v. City of Mullens*, 139 W.Va. 399, 416, 83 S.E.2d 505, 515 (1954) ("[T]his Court will not on ... appeal reverse the judgment or decree of a trial court for error which is merely harmless.").

teria which was not embraced in rules governing ambulatory care facilities, but rather looked to rules applicable to acute care facilities in arriving at their decision.

The evidence offered by the appellants clearly satisfied the requirements of the rules for ambulatory facilities by defining the "... expected areas around the ambulatory care facility from which the center is expected to draw its patients." *State Health Plan, Certificate of Need Standards, Ambulatory Care Centers,* Section IIA. The HCA and the majority were clearly wrong to disregard evidence of need tendered by appellants in all six counties named in their application.

Perhaps appellants' mistake was proceeding initially *pro se* and taking the advice of Authority staff in completing their application.

Respectfully, I dissent.